MRS. VIRGINIA LEE LINDLEY v. KERMIT O. FRAZIER AND OSCAR LINDLEY, ADMINISTRATORS OF THE ESTATE OF A. O. LINDLEY, DECEASED.

(Filed 2 November, 1949.)

1. **Executors and Administrators § 15d—**

While there is no presumption that personal services rendered by a daughter-in-law are gratuitous, in her action against the estate of her father-in-law to recover for such services upon *quantum meruit* the burden still rests upon her to show circumstances from which it can be inferred

that the services were rendered and received with a mutual understanding that they were to be paid for, but proof that such services were knowingly received raises such inference.

**2. Same—Evidence held insufficient to establish implied promise to pay for personal services of daughter-in-law.**

Plaintiff's evidence was to the effect that she and her husband went to live with her father-in-law at his request, that her husband worked on the farm and received therefor wages or a share of the crop as agreed upon by them and that plaintiff did the cooking and household duties. Plaintiff's husband testified that his father stated he wanted him and his wife to have a home and that he had made a deed to them for a part of the tract, but there was no testimony connecting this to any promise by intestate. The deed was never delivered. *Held:* The evidence is insufficient to show an implied contract to pay for plaintiff's services, and nonsuit in her action to recover upon *quantum meruit* should have been entered.

DEFENDANTS' appeal from *Crisp, Special Judge,* July Term, 1949, RANDOLPH Superior Court.

The plaintiff brought this action against the defendant administrators to recover for services alleged to have been rendered A. O. Lindley, the decedent, basing her claim upon a *quantum meruit.*

The plaintiff, daughter-in-law of the deceased Lindley, claims that at the request of Lindley she went to live in the home and undertook for him the care of his household, doing the cooking, a large part of the ironing and other domestic duties, and that Lindley died intestate without having paid her for the services. The defendants deny the material allegations of the complaint.

A summary of the evidence pertinent to the decision follows:

Dwight Lindley, husband of the plaintiff, was released from the army on July 29, 1943, upon his own request, for the purpose of farming. He states that his father, A. O. Lindley "got me out of the army to stay with him and help take care of the farm." On August 1, 1943, Dwight came to see his father and the latter asked him to bring the plaintiff "down so she could cook for us." At that time the plaintiff was living with her father in McLeansville. The plaintiff, with her husband and one child, moved into the home of A. O. Lindley that night, and continued to reside there until the last of October, 1947. Another child was born to the plaintiff during such residence. A. O. Lindley told Dwight Lindley and the plaintiff that he was expecting them to have a home there and he made a deed for eight acres, which deed was never delivered to them.

The plaintiff did the cooking, housecleaning, part of the washing and ironing and did general housework and helped her husband in the field. A daughter of A. O. Lindley did some of the washing for him. Dwight stated that the bargain was that A. O. Lindley would pay the light bill so long as the plaintiff and her husband stayed and if she would do the

housework. Dwight Lindley helped his father complete the 1943 crop and was paid for his services. For the next three years he farmed the land on a rent-share basis, getting one-half the crop. A. O. Lindley paid for Dwight's part of the fertilizer for two years, after which Dwight paid his own expenses. Dwight Lindley testified that he and his wife bought most of the food of the household with their own money, most of which was made by his wife, who was working.

He did not, however, farm for the year 1947 because a brother had come in and there was not enough land for them all. The father was approximately 70 years old when plaintiff and her husband moved in. While unable at times to do a full day's work, he was never bedridden, and looked after the farm chores and did the milking. During this time there were two adult brothers of Dwight Lindley and a share-cropper who at intervals took their meals in the home. Plaintiff, with her husband, moved away in October, 1947, about three months before A. O. Lindley died. Dwight and his family moved back to the farm then because they had a lot there, and their furniture, and because they could not find a house.

When the plaintiff rested her case defendants demurred to the evidence and moved for judgment of nonsuit, which was overruled. Defendants excepted. Defendants offered no evidence.

The evidence was submitted to the jury and the issues were answered in favor of the plaintiff. Defendants moved to set aside the verdict for errors committed on the trial. The motion was declined and defendants excepted. To the ensuing judgment upon the verdict defendants objected, excepted, and gave notice of appeal.

*Stedman H. Hines, of Hughes & Hines, and Marvin J. Gatlin for plaintiff, appellee.*

*T. R. Wall and Miller & Moser for defendants, appellants.*

SEAWELL, J. The relationship of daughter-in-law has been held not to raise the presumption that services performed while living within the family are gratuitous. *Dunn v. Currie,* 141 N.C. 123, 53 S.E. 533; *Nesbitt v. Donoho,* 198 N.C. 147, 150 S.E. 875; *Landreth v. Morris,* 214 N.C. 619, 200 S.E. 378; *Francis v. Francis,* 223 N.C. 401, 26 S.E. 2d 907. But, although the plaintiff may not have been confronted with this presumption to hurdle, the burden still rested upon her to show circumstances from which it might be inferred that the services were rendered and received with the mutual understanding that they were to be paid for. The *quantum meruit* must rest upon an implied contract. Nothing else appearing, such an inference is permissible when a person knowingly accepts from another services of value, or, as it is sometimes put, under

circumstances calculated to put a reasonable person on notice that the services are not gratuitous. *Francis v. Francis, supra; Stewart v. Wyrick,* 228 N.C. 429, 45 S.E. 2d 764; *Ray v. Robinson,* 216 N.C. 430, 5 S.E. 2d 127; *Potter v. Clark,* 229 N.C. 350, 49 S.E. 2d 636; *Pew v. First National Bank,* 130 Mass. 391, 54 A.L.R., Anno., p. 549.

But the transaction with which we are dealing in the instant case is not so simple; much else appears to challenge the application of the rule and defeat the inference. *Carlson v. Krantz,* 214 N.W. 928 (Minn.), 54 A.L.R. 545, Anno., pp. 548, 549.

The strongest bid for recognition of an implied contract lies in the testimony of Dwight Lindley that his father stated to him and his wife that he intended they should have a home, and that he had made a deed for eight acres, (which was never delivered). This, however, appears in the evidence without any attempt to attach it or couple it with any promise made by A. O. Lindley and, in fact, without reference to the subject of compensation at all and may well be attributed to parental motives. It is not in evidence that any promise was made.

The whole evidence seems to indicate that the parties, in living together, were engaged in a joint venture or enterprise, each contributing to the extent of his or her abilities for the common good without mutual understanding that any of the services so contributed were to be paid for. No obligation survived the termination of the *modus vivendi*.

The demurrer to the evidence should have been sustained and the motion for nonsuit allowed.

The judgment to the contrary is
Reversed.