ELLA McCRAW SNOW BY AND THROUGH HER ATTORNEY IN FACT, MAXINE SNOW DOCKERY AND ELLA McCRAW SNOW v. WILLIAM T. EAST AS ADMINISTRATOR OF THE ESTATE OF CLARICE M. McMICKLE AND THE ESTATE OF CLARICE M. McMICKLE

No. 8817SC1387

(Filed 17 October 1989)

1. **Accord and Satisfaction § 1 (NCI3d)— services rendered by plaintiff to deceased sister—check from administrator to plaintiff—no payment in full for all services**

   In an action to recover over $40,000 from deceased's estate for services rendered by plaintiff to her sister prior to the sister's death, a check for $133.72 tendered by defendant administrator of the estate and cashed by plaintiff did not constitute accord and satisfaction of any and all debts the sister owed plaintiff at the time of her death, since plaintiff and defendant had no discussion at any time that the check covered the cost of anything except the money plaintiff loaned her sister and the pajamas and robe she purchased for her sister; words written by defendant on the face of the check, "In Full Food, Clothing, etc.," could be construed to support plaintiff's belief; and it was not at all clear that defendant intended the check to cover full payment "of a disputed claim."

   **Am Jur 2d, Accord and Satisfaction §§ 33-35, 44.**

2. **Quasi Contracts and Restitution § 2.1 (NCI3d)— services rendered plaintiff's deceased sister—no recovery on quantum meruit claim**

   The trial court properly granted summary judgment for defendant on plaintiff's quantum meruit claim on the basis that a contract for payment for services never existed between plaintiff and her sister since plaintiff offered no evidence that she and her sister had ever discussed payment for services which plaintiff rendered; there was no evidence of deceased's intent to pay plaintiff; and, because plaintiff and deceased were sisters, the services plaintiff performed were presumed gratuitous absent any evidence to the contrary.

   **Am Jur 2d, Restitution and Implied Contracts §§ 26, 30-33, 53.**

APPEAL by plaintiff from *Mills (F. Fetzer), Judge.* Judgment entered 12 September 1988 in Superior Court, SURRY County. Heard in the Court of Appeals 23 August 1989.

On 8 June 1988, plaintiff filed a cause of action against defendants William T. East, administrator, and the Estate of Clarice M. McMickle to recover the sum of $42,219.27 plus interest and attorney's fees for services rendered by plaintiff to her sister, Clarice M. McMickle, from 1983 until the time of Mrs. McMickle's death on 22 August 1987. These services included providing food, shelter, electricity, telephone, heat, transportation and all other necessities and were, according to plaintiff, provided by her upon the reasonable expectation that she would be compensated for these services by Mrs. McMickle. Plaintiff alleged that the value of these services was $47,400.00, and that between 1981 until the time of her death in 1987, Mrs. McMickle paid plaintiff $5,180.73, leaving a balance due of $42,219.27.

At least two days prior to Mrs. McMickle's death, plaintiff loaned some money to Mrs. McMickle and purchased pajamas and a robe for her. After Mrs. McMickle's death, defendant William T. East was appointed administrator of her estate. On 26 September 1987, defendant tendered a check to plaintiff in the amount of $133.72, upon which he noted that this was "In Full [For] Food, Clothing, etc." Plaintiff had no conversation with defendant East that this check was intended to cover the costs of all services rendered and raised no issue regarding the specific services the check covered at that time. Plaintiff subsequently cashed the check. Plaintiff testified during a deposition on 29 July 1988 that this ($133.72) was the amount of money Mrs. McMickle owed her and did not say anything to defendant about additional monies owed because she was bereaved and did not think to mention the additional sum.

Plaintiff submitted a claim to defendant as administrator for Mrs. McMickle's estate for $42,219.27, which was denied by defendant on 15 March 1988. Plaintiff subsequently brought this action, and defendant answered and asserted affirmative defenses of compromise and settlement, accord and satisfaction, account stated, statute of limitations, laches and estoppel. Defendant included a Motion for Summary Judgment in his answer and subsequently filed a separate Motion for Summary Judgment on 15 August 1988. Defendant filed no affidavits or other documents with his Motion

for Summary Judgment. Plaintiff responded to defendant's motion on 12 September 1988, and filed with the Clerk of Superior Court affidavits of plaintiff and her daughter, Maxine Snow Dockery. Service of the affidavits upon defendant's counsel was accomplished, by agreement of the parties, by plaintiff's counsel leaving a copy of the affidavits in the mailbox at defendant's counsel's home one or two days prior to the hearing.

A hearing on defendant's motion was held 12 September 1988. Defendant relied upon a deposition of the plaintiff and an affidavit of her daughter, Mrs. Dockery, in support of his Motion for Summary Judgment. Plaintiff testified in her deposition that she and Mrs. McMickle had no written agreement that she [Mrs. McMickle] would pay plaintiff any money for goods and services rendered, and that plaintiff "just figured that she would pay at least half of the expenses, plus rent." Plaintiff also testified that she never had any conversation with defendant East that Mrs. McMickle owed plaintiff more money than the $133.72 for which she was paid.

Mrs. Dockery averred in an affidavit that on 26 September 1987, plaintiff requested defendant to reimburse her for pajamas, a robe and money for which plaintiff had loaned Mrs. McMickle a few days before Mrs. McMickle's death. Mrs. Dockery also stated that there was no discussion between plaintiff and defendant on that date that the check for $133.72 was for food, room, electricity, board, transportation or any other services.

The trial court granted summary judgment in favor of defendant on 12 September 1988 based upon the lack of evidence that Mrs. McMickle was indebted to plaintiff and the notations on the check for $133.72 that it was payment in full for "Food, Clothing, etc." From this judgment, plaintiff appeals.

*Max D. Ballinger for plaintiff-appellant.*

*Wyatt Early Harris Wheeler & Hauser, by William E. Wheeler, for defendant-appellee.*

ORR, Judge.

The dispositive issue on appeal is whether the trial court erred in granting defendant's motion for summary judgment. A motion for summary judgment under G.S. 1A-1, Rule 56(c) "shall be rendered . . . if the pleadings, depositions, . . . show that there is no genuine issue as to any material fact and that any party is entitled to a

judgment as a matter of law." This remedy permits the trial court to decide whether a genuine issue of material fact exists; it does not allow the court to decide an issue of fact. *Sauls v. Charlotte Liberty Mut. Ins. Co.*, 62 N.C. App. 533, 535, 303 S.E.2d 358, 360 (1983) (citations omitted).

In a summary judgment proceeding, the trial court must determine if there is a triable material issue of fact, viewing all evidence presented in the light most favorable to the nonmoving party. *Land-of-Sky Regional Council v. Co. of Henderson*, 78 N.C. App. 85, 336 S.E.2d 653 (1985), *disc. rev. denied*, 316 N.C. 553, 344 S.E.2d 7 (1986); *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 335 S.E.2d 79 (1985), *disc. rev. denied*, 315 N.C. 597, 341 S.E.2d 39 (1986).

[1] Plaintiff contends that the check defendant tendered to plaintiff and cashed by plaintiff did not constitute accord and satisfaction of any and all debts Mrs. McMickle owed plaintiff at the time of Mrs. McMickle's death. We agree.

Viewing the evidence in the light most favorable to plaintiff as the nonmoving party, it establishes that plaintiff and defendant did not have any discussion at any time that the check for $133.72 covered the cost for anything except the money plaintiff loaned Mrs. McMickle and the pajamas and robe she purchased for Mrs. McMickle. Defendant's reliance on *Sanyo Electric, Inc. v. Albright Distributing Co.*, 76 N.C. App. 115, 331 S.E.2d 738, *disc. rev. denied*, 314 N.C. 668, 335 S.E.2d 496 (1985) is misplaced. Defendant is correct in his assertion that *Sanyo* stands for the proposition that the law of accord and satisfaction in North Carolina does not require a complete discussion of the alleged claim, a summary of the amounts owed, or a detailed agreement concerning payments therefor, and that all that is required is "some indication on the check that it is tendered in full payment." *Id.* at 117, 331 S.E.2d at 740. Cashing a check tendered in full payment of a disputed claim establishes, as a matter of law, an accord and satisfaction. *Id.*

However, in the case *sub judice*, the evidence tends to show that plaintiff believed that the check for $133.72 was full payment only for the clothes and loan to Mrs. McMickle a few days prior to Mrs. McMickle's death. Plaintiff stated in her deposition that there was no discussion between defendant and plaintiff at the time the check was written or subsequently that the sum covered any other expenses on behalf of Mrs. McMickle.

SNOW v. EAST

[96 N.C. App. 59 (1989)]

Moreover, the words written by defendant on the face of the check may be construed to support plaintiff's belief. Defendant wrote, "In Full Food, *Clothing*, etc." (Emphasis added.) The term "etc." can be interpreted as the loan plaintiff made to Mrs. McMickle, rent, fuel, electricity, transportation or any other expense. In *Sanyo*, the check in question was accompanied by a letter stating that "This check is delivered to you in full, final and complete settlement of all amounts . . . ." *Id.* at 117-18, 331 S.E.2d at 740. It is not at all clear that defendant intended this check to cover full payment "of a disputed claim" as is required by *Sanyo*. In fact, at the time defendant wrote the check for $133.72, there was no other claim at all. If there is no claim, then there can be no accord and satisfaction.

[2] Plaintiff next argues that the trial court erred in granting summary judgment on the basis that a contract for payment for services never existed between plaintiff and Mrs. McMickle. As to this contention, we disagree.

Plaintiff maintains that she and Mrs. McMickle had an implied contract and may therefore recover under a *quantum meruit* theory. In *Twiford v. Waterfield*, 240 N.C. 582, 83 S.E.2d 548 (1954), our Supreme Court stated:

> The circumstances must be such as to warrant the inference that the services were rendered and received with the mutual understanding that they were to be paid for. 'The *quantum meruit* must rest upon an implied contract.' *Lindley v. Frazier*, 231 N.C. 44, 55 S.E.2d 815. It must be made to appear that at the time the services were rendered, payment was intended on the one hand and expected on the other. *Brown v. Williams*, 196 N.C. 247, 145 S.E. 233; *Francis v. Francis*, 223 N.C. 401, 26 S.E.2d 907. The plaintiff must show by the greater weight of the evidence that both parties, at the time the labor was done or the services were rendered, contemplated and intended that pecuniary recompense should be made for the same. *Young v. Herman*, 97 N.C. 280; *Staley v. Lowe*, 197 N.C. 243, 148 S.E. 240; *Lindley v. Frazier, supra; Lowrie v. Oxendine*, 153 N.C. 267, 69 S.E. 131.
>
> . . .
>
> If the services were rendered as a pure gratuity or in discharge of a moral obligation, no promise to pay is implied and no presumption of such promise arises. (Citation omitted.)

240 N.C. at 585, 83 S.E.2d at 551.

SNOW v. EAST

[96 N.C. App. 59 (1989)]

When one family member performs services for another within the family, those services are presumed to have been gratuitous, performed from a sense of moral obligation and with no expectation of payment. *See* 2 Brandis on North Carolina Evidence sec. 232 (1982). Even when the relationship is not sufficiently close to raise a presumption of gratuitous services, in order to recover, plaintiff must "show circumstances from which it might be inferred that the services were rendered and received with the mutual understanding that they were to be paid for, . . . ." *Brown v. Hatcher*, 268 N.C. 57, 60, 149 S.E.2d 586, 589 (1966) (citations omitted).

Applying the above principles to the case *sub judice*, we find that we cannot infer from any of the evidence that plaintiff and Mrs. McMickle had an implied contract.

First, plaintiff stated in her deposition that she "*just figured* that she [Mrs. McMickle] would pay at least half of the expenses plus rent" (emphasis added). Plaintiff acknowledged that there was no written agreement and there was no evidence that she and Mrs. McMickle had even discussed payment for services.

Second, there is no evidence of Mrs. McMickle's intent to pay plaintiff. The general rule under a *quantum meruit* theory is that the payment for services must be intended by one party and expected by the other. *Id.* Here, plaintiff presented no evidence that Mrs. McMickle ever intended to pay her for her services. Plaintiff stated in her deposition that Mrs. McMickle paid her over $5,000.00 during the period she lived with plaintiff. Plaintiff presented no explanation or evidence, however, as to the basis for these payments.

Finally, we find that because plaintiff and Mrs. McMickle were sisters, the services plaintiff performed for Mrs. McMickle are presumed gratuitous absent any evidence to the contrary.

For the reasons set forth above, we find that the trial court did not err in granting summary judgment in favor of defendant.

Affirmed.

Chief Judge HEDRICK and Judge LEWIS concur.