IN THE MATTER OF THE FORECLOSURE OF A LIEN BY FIVE OAKS RECREATIONAL ASSOCIATION, INC., A NORTH CAROLINA CORPORATION AGAINST, MARTIN J. HORN OWNER

No. COA11-1053

(Filed 6 March 2012)

**1. Associations—Planned Community Act—effective date**

The North Carolina Planned Community Act, which governs the operation of North Carolina homeowners associations, generally applies only to associations created on or after 1 January 1999, with some provisions applying regardless of when the association was created. Those provisions include foreclosure for delinquent assessments, the subject of this action. Moreover, the superior court order following a review *de novo* of the clerk of court's order authorizing foreclosure was a final judgment, so that the Court of Appeals had jurisdiction over the appeal.

**2. Accord and Satisfaction—check marked full payment—no evidence of disputed debt**

The trial court did not err by granting summary judgment for petitioner in a foreclosure action where respondent raised the defense of accord and satisfaction based upon a check allegedly

IN RE FORECLOSURE OF FIVE OAKS RECREATIONAL ASS'N, INC.

[219 N.C. App. 320 (2012)]

marked "full payment." A notation of "full payment" did not constitute an accord and satisfaction when there was no evidence of a dispute over the debt.

Appeal by Respondent from order entered 2 June 2011 by Judge Orlando F. Hudson, Jr. in Durham County Superior Court. Heard in the Court of Appeals 25 January 2012.

*Hatch, Little, & Bunn, LLP, by Tina Frazier Pace and Justin R. Apple, for Petitioner-appellee.*

*The Law Offices of Martin J. Horn, PLLC, by Martin J. Horn, for Respondent-appellant.*

HUNTER, JR., Robert N., Judge.

Martin J. Horn ("Respondent") appeals from the trial court's amended order granting summary judgment in favor of Five Oaks Recreational Association, Inc. ("Petitioner") and authorizing Petitioner to proceed with foreclosure of Respondent's property. After careful review, we affirm.

## I. Factual & Procedural Background

Petitioner is a North Carolina non-profit corporation located in Durham. Petitioner maintains recreational facilities for the use and benefit of its members, which generally consist of property owners in the Five Oaks Community. Respondent owns property located at 4302 Pin Oak Drive in Durham—within the Five Oaks Community—and is a member of Petitioner. As a member, Respondent and his property are subject to the terms of Petitioner's Declaration of Covenants, Conditions, and Restrictions ("the Declaration") as recorded in Book 432, Page 306, of the Durham County Register of Deeds.

Pursuant to the Declaration, Respondent has agreed to pay dues, or "assessments," to Petitioner to cover the costs of maintaining and operating Petitioner's recreational facilities. Article X Section 3 of the Declaration provides that the "assessments, together with interest, costs, and reasonable attorney's fees for the collection thereof shall be a charge and lien upon the lot of the respective Owners thereof, and the same shall be a continuing lien upon the lot against which each such assessment is made." The Declaration further provides that if an assessment is not paid within thirty days of its due date, Petitioner has the power to "foreclose the lien against the lot, and interest, costs, and reasonable attorney's fees of any such action for collection thereof shall be added to the amount of such assessment."

**IN RE FORECLOSURE OF FIVE OAKS RECREATIONAL ASS'N, INC.**

[219 N.C. App. 320 (2012)]

Petitioner's records indicate that Respondent fell behind on his assessment payments in April 2009 and that he has maintained a past due balance ever since. On 13 August 2010, Petitioner notified Respondent by letter that Respondent owed $458.00 in unpaid assessments. Petitioner cautioned Respondent that it would exercise its power under the Declaration to file a claim of lien against Respondent's property—and possibly institute foreclosure proceedings—if Respondent failed to arrange for payment of his past due balance within fifteen days.

Petitioner received no response from Respondent and retained counsel to assist in Petitioner's debt collection efforts. By letter dated 21 September 2010, Petitioner's counsel informed Respondent of his statutory obligation to pay Petitioner's attorney's fees incurred through collection of Respondent's debt in addition to the debt itself. Petitioner indicated that Respondent's debt, including attorney's fees, totaled $533.00, and, moreover, that any payments made by Respondent would be applied "in the following order: (1) to any fines accrued upon [Respondent's] assessment account; (2) attorneys fees incurred in the collection of those fines or in the collection of [Respondent's] past due assessments; (3) costs, including administrative costs; (4) late fees; and (5) past due assessments." The letter directed Respondent to tender all payments through Petitioner's counsel.

As of 11 October 2010, Petitioner had not received a response from Respondent. Petitioner sent Respondent a copy of the claim of lien that it was in the process of filing against Respondent's property pursuant to its authority under the Declaration. Petitioner indicated the claim of lien was for $611.00 in past due assessments and $225.00 in attorney's fees for a total amount of $836.00. Petitioner filed the claim of lien against Respondent's property in Durham County District Court on 15 October 2010.

On 5 November 2010, Petitioner's counsel received a check from Respondent for $611.00. The check, as reflected in the record, bears a handwritten message on the "MEMO" line in the lower left-hand corner of the instrument. Although it is difficult to decipher the handwriting, Respondent asserts in his affidavit that the message reads "full payment." However, Brittany Van Zille, the office assistant who processed the check, states in her affidavit that the check "was not accompanied by any note or correspondence indicating it was for payment in full." Ms. Van Zille further states that she knows not to process checks designated "payment in full," and, even if she had

noticed the message, she "would not have been able to tell that the writing therein indicated that it was for 'full payment.' "

Bank records indicate that Petitioner's counsel indorsed and processed Respondent's check on 9 November 2010. That same day, Petitioner commenced foreclosure proceedings by filing a petition and notice of foreclosure hearing in Durham County Superior Court.[1] The petition described Respondent's debt as comprised of $611.00 in past due assessments, $625.00 in attorney's fees, and $180.00 in court costs.

On 12 April 2011, a foreclosure hearing based upon foreclosure of the claim of lien was held before the Honorable Archie L. Smith, III, Clerk of Superior Court of Durham County. Respondent—representing himself *pro se*—asserted that the notation on the check and subsequent processing of the check by Petitioner's counsel constituted accord and satisfaction, thereby satisfying his debt and precluding foreclosure. The clerk of court disagreed, concluding as a matter of law "[t]hat the tendered check did not constitute accord and satisfaction as it was illegible and insufficient to notify [Petitioner] that it was tendered as payment in full." The clerk of court authorized Petitioner to proceed with foreclosure and ordered Respondent to pay Petitioner's attorney's fees and court costs totaling $1,680.00. On 27 April 2011, Respondent appealed the clerk of court's order to Durham County Superior Court pursuant to N.C. Gen. Stat. § 45-21.16(d1) (2011).

On 10 May 2011, Petitioner filed a motion for summary judgment with the trial court. In support of its motion, Petitioner offered the affidavits of Ms. Van Zille and Petitioner's counsel, an affidavit of debt, a certified claim of lien, and a certified copy of the Declaration. Respondent countered by filing his own motion for summary judgment on 18 May 2011, offering his sworn affidavit in support of the motion.

In a summary judgment order entered 24 May 2011, the trial court found, *inter alia*, that the notation on the check was "illegible," that there was no evidence of a dispute over the amount of the debt, and that the amount demanded by Petitioner for the debt owed was for a "sum certain." The trial court concluded there had not been accord and satisfaction as a matter of law because: (1) "the notation on the check was illegible and was therefore insufficient to notify

---

1. It is unclear from the record whether Petitioner's counsel submitted the petition and notice of foreclosure hearing to the trial court prior to its receipt of Respondent's check.

[Petitioner] that it was tendered as payment in full," (2) "the debt was neither disputed nor unliquidated," and (3) "there was no 'meeting of the minds' and no agreement between [Respondent] and [Petitioner] to pay and accept less than the amount claimed." The trial court's order authorized Petitioner to proceed with foreclosure of Respondent's property, and, in addition, ordered Respondent to pay Petitioner's attorney's fees and court costs totaling $5,739.50. The trial court entered an amended order of summary judgment on 2 June 2011. The amended order omits the trial court's factual findings but is otherwise identical to the original summary judgment order. Respondent timely filed his notice of appeal from the 2 June 2011 order with this Court on 21 June 2011.

## II. Analysis

[1]  Chapter 47F of our General Statutes, entitled the "North Carolina Planned Community Act," ("the Act") governs the operation of North Carolina homeowners associations such as Petitioner. *See* N.C. Gen. Stat. § 47F-1-102(a) (2011). We note the Act generally applies only to homeowners associations created on or after 1 January 1999, *see id.*, and, according to the Declaration, Petitioner was created on or about 9 December 1975. However, some of the Act's provisions—and the only provisions relevant to the matter *sub judice*—apply regardless of the association's date of inception. *See* N.C. Gen. Stat. § 47F-1-102(c) (2011). Thus, the provisions of the Act cited herein control.

With respect to collection of delinquent assessments, the Act provides that "[a]ny assessment levied against a lot remaining unpaid for a period of 30 days or longer shall constitute a lien on that lot when a claim of lien is filed of record in the office of the clerk of superior court of the county in which the lot is located." N.C. Gen. Stat. § 47F-3-116(a) (2011). Moreover, the Act vests the association holding the claim of lien with authority to "foreclose the claim of lien in like manner as a mortgage on real estate under power of sale under Article 2A of Chapter 45 of the General Statutes." *Id.*

N.C. Gen. Stat. § 45-21.16(d) delineates the procedure for a foreclosure hearing held before the clerk of court. *See* N.C. Gen. Stat. § 45-21.16(d) (2011). At the hearing, the party seeking foreclosure must establish four statutorily required elements: (1) a valid debt exists and the foreclosing party is the holder of the debt; (2) the debtor has defaulted on the debt; (3) the instrument evidencing the debt permits foreclosure; and (4) proper notice has been afforded to all entitled parties. *See id.*; *In re Adams*, ___ N.C. App. ___ , ___ , 693

S.E.2d 705, 709 (2010). Due to the extra-judicial nature of these pro-ceedings, which are "meant to 'function as a more expeditious and less expensive alternative to a foreclosure by action,' 'foreclosure under [N.C. Gen. Stat. § 45-21.16(d)] is not favored in the law, and its exercise will be watched with jealousy.' " *In re Adams*, ___ N.C. App. at ___ , 693 S.E.2d at 708 (citations omitted). The clerk of court's order authorizing or dismissing foreclosure is appealable to the supe-rior court. N.C. Gen. Stat. § 45-21.16(d)(1) (2011). On appeal, the superior court reviews *de novo* the same four issues described *supra*. *See id.* The superior court's order authorizing Petitioner to proceed with foreclosure was a final judgment, and, therefore, this Court exer-cises jurisdiction over Respondent's appeal pursuant to N.C. Gen. Stat. § 7A-27(b) (2011).

## A.  Standard of Review

**[2]**  A motion for summary judgment is appropriately granted where "the pleadings, depositions, answers to interrogatories, and admis-sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2011). The moving party can establish it is entitled to judgment "by proving that an essential element of the opposing party's claim is nonexistent, or by showing that the opposing party either cannot pro-duce evidence to support an essential element of his or her claim or cannot surmount an affirmative defense which would bar the claim." *Sanyo Elec., Inc. v. Albright Distrib. Co.*, 76 N.C. App. 115, 117, 331 S.E.2d 738, 739 (1985). On appeal, this Court must review the entire record, viewing the evidence in the light most favorable to the non-moving party. *Collingwood v. G.E. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989).

In the instant case, the parties agree there are no issues of mate-rial fact and this matter is ripe for summary judgment. Respondent primarily contends the trial court erred by granting summary judg-ment in favor of Petitioner because the check tendered by Respondent and deposited by Petitioner constituted accord and sat-isfaction as a matter of law. Respondent raises the defense of accord and satisfaction in an attempt to negate the existence of a valid debt, thereby precluding Petitioner's foreclosure of its claim of lien against Respondent's property. For the following reasons, we disagree.

## B.  Accord and Satisfaction

"Although the existence of accord and satisfaction is generally a question of fact, 'where the only reasonable inference is existence or non-existence, accord and satisfaction is a question of law and may be adjudicated by summary judgment when the essential facts are made clear of record.' " *Zanone v. RJR Nabisco, Inc.*, 120 N.C. App. 768, 771, 463 S.E.2d 584, 587 (1995) (citation omitted). Our Supreme Court has described the common law doctrine of accord and satisfaction as follows:

> An accord and satisfaction is compounded of the two elements enumerated in the term. "An 'accord' is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or tort, something other than or different from what he is, or considers himself, entitled to; and a 'satisfaction' is the execution, or performance, of such an agreement."

*Dobias v. White*, 239 N.C. 409, 413, 80 S.E.2d 23, 27 (1954) (citation omitted). "Agreements are reached by an offer by one party and an acceptance by the other. This is true even though the legal effect of the acceptance may not be understood." *Prentzas v. Prentzas*, 260 N.C. 101, 104, 131 S.E.2d 678, 681 (1963).

Respondent asserts "the tendering of a check marked full payment is akin to an offer, it is an accord. When the check is accepted, cashed or negotiated, then the offer is accepted by law, the accord becomes an accord and satisfaction—and the matter is closed and resolved." Respondent misconstrues the doctrine of accord and satisfaction and its applicability to the facts before this Court.

"When there is some indication on a check that it is tendered in full payment of a *disputed* claim, the cashing of the check is held to be an accord and satisfaction as a matter of law." *Sanyo*, 76 N.C. App. at 117, 331 S.E.2d at 740 (emphasis added). However, where there is "no evidence or allegation of communication between plaintiff and defendant concerning a dispute over the account," nor "evidence or allegation of negotiation or agreement between plaintiff and defendant concerning payment or acceptance of less than the full amount of the account," the defendant's notation on a check stating that the check is to be in "full payment" of the debt owed does not constitute an accord and satisfaction. *Fruit & Produce Packaging Co. v. Stepp,*

15 N.C. App. 64, 68, 189 S.E.2d 536, 538 (1972). " 'The fact that a remittance by check purporting to be "in full" is accepted and used does not result in an accord and satisfaction if the claim involved is liquidated and undisputed . . . .' " *Id.* (citation omitted).

Viewing the evidence in the light most favorable to Respondent, it does not establish the existence of a dispute concerning Respondent's debt. Respondent's debt, as detailed in Petitioner's letters, was based upon past due assessments owed by Respondent and the attorney's fees incurred by Petitioner in attempting to collect this debt from Respondent. Respondent did not reply to Petitioner's letters and gave no indication that he disputed the amount of Petitioner's claim. Without preface, Respondent "delivered a check" to Petitioner's counsel purportedly marked "full payment." The check was not accompanied by a letter or other documentation expressing Respondent's dissatisfaction with the amount of the debt or explaining the meaning of the notation on the check. *See Sanyo*, 76 N.C. App. at 117-18, 331 S.E.2d at 740 (holding there was accord and satisfaction as a matter of law where debtor tendered full payment check with accompanying letter describing check as delivered " 'in full, final and complete settlement of all amounts owed,' " and " '[i]n the event you are not agreeable to this check constituting full, final and complete settlement of our account with you, please return this check forthwith' "). There was no evidence of a discussion at any time between Respondent and Petitioner that Respondent's check was intended to cover Petitioner's claim in full. *See Snow v. East*, 96 N.C. App. 59, 62-63, 384 S.E.2d 689, 691 (1989) (holding no accord and satisfaction because there was no discussion between the parties that a check tendered as payment in full was intended to cover the entire debt owed). Absent some other evidence demonstrating negotiation or a dispute over the amount of the asserted debt, Respondent's notation on the check's "MEMO" line was not sufficient to constitute a dispute for purposes of accord and satisfaction. Thus, Petitioner was " 'justified in treating the transaction as merely the act of an honest debtor remitting less than is due under a mistake as to the nature of the contract.' " *Fruit & Produce Packaging Co.*, 15 N.C. App. at 68, 189 S.E.2d at 538 (citation omitted).

Furthermore, Respondent's reliance on *Barber v. White*, 46 N.C. App. 110, 264 S.E.2d 385 (1980) is misplaced. In *Barber*, the plaintiff entered into an agreement to paint the defendants house at an estimated cost of $2,700.00. *Id.* at 111, 264 S.E.2d at 385. The plaintiff completed the work and presented the defendants with "a bill for

$2,359.19, *which defendants contested as too high." Id.* (emphasis added). The defendants tendered a check to the plaintiff marked "painting in full" for $1,813.19. *Id.* The plaintiff cashed the check and then demanded the balanced owed by the defendants. *Id.* This Court held that the "Plaintiff's cashing of the check marked 'painting in full' established an accord and satisfaction as a matter of law." *Id.* at 113, 264 S.E.2d at 386.

Unlike the defendants in *Barber*, Respondent did not attempt to negotiate or contest the amount of his debt. He simply dropped off an envelope with an enclosed check for an amount less than the amount due. *Barber* stands for the principle that cashing a check settles a *disputed* debt, and, as Respondent has failed to offer any evidence of a dispute, we find that case inapplicable to the case at bar.

We note the common law doctrine of accord and satisfaction has been codified in section 25-3-311 of our General Statutes as part of North Carolina's adoption of the Uniform Commercial Code. *See* N.C. Gen. Stat. § 25-3-311 (2011). However, section 25-3-311 applies only where the amount of the claim is "unliquidated or subject to a bona fide dispute." *See id.* This Court has interpreted this requirement to mean that "the 'person against whom a claim is asserted' must prove, *inter alia*, that 'the amount of the claim was unliquidated or subject to a bona fide dispute' *prior* to submission of the instrument representing full and final payment. *Hunter-McDonald, Inc. v. Edison Foard, Inc.*, 157 N.C. App. 560, 563, 579 S.E.2d 490, 492 (2003) (emphasis added); *see also Futrelle v. Duke Univ.*, 127 N.C. App. 244, 249-50, 488 S.E.2d 635, 639 (1997) ("The requirement, that a dispute exist, is satisfied in that, *prior to payment* . . . the parties disputed what remedy, if any, plaintiff was entitled to receive." (emphasis added)). "It is not enough for defendant to demonstrate the parties presently disagree as to the amount due, but rather defendant must prove 'the amount of the claim was unliquidated or subject to a bona fide dispute[.]' " *Hunter-McDonald, Inc.*, 157 N.C. App. at 563, 579 S.E.2d at 492 (citation omitted) (alteration in original).

As discussed *supra*, Respondent failed to introduce evidence demonstrating the existence of a dispute at any time prior to tendering the check to Petitioner. This fact alone renders N.C. Gen. Stat. § 25-3-311 inapplicable to Respondent's accord and satisfaction defense; our common law analysis, *supra*, is dispositive. Respondent's remaining contentions on this issue are without merit. We hold that Respondent failed to establish accord and satisfaction as a mat-

ter of law, and the trial court did not err in granting summary judgment in favor of Petitioner.

For the foregoing reasons, the trial court's order is

Affirmed.

Judges STEELMAN and GEER concur.