Clark v. Burnette, 2020 NCBC 7.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| WAKE COUNTY | 19 CVS 8565 |
| | |
| ANDREW CLARK, | |
| | |
| Plaintiff, | |
| v. | **ORDER AND OPINION ON MOTION TO DISMISS** |
| JARED BURNETTE and JBAC PROPERTIES, LLC | |
| | |
| Defendants. | |

THIS MATTER comes before the Court on Defendants Jared Burnette and JBAC Properties, LLC's (collectively, "Defendants") Motion to Dismiss. ("Motion to Dismiss," ECF No. 13.)

THE COURT, after considering the Motion to Dismiss, the briefs in support of and in opposition to the Motion to Dismiss, the arguments of counsel at the hearing, and other appropriate matters of record, CONCLUDES that the Motion to Dismiss should be DENIED for the reasons set forth below.

*Barker Richardson, PLLC, by Ian Richardson, Esq. and Daniel T. Barker, Esq. for Plaintiff Andrew Clark.*

*Williams Mullen, by Caitlin M. Poe, Esq. and Camden R. Webb, Esq. for Defendants Jared Burnette and JBAC Properties, LLC.*

McGuire, Judge.

I.    PROCEDURAL BACKGROUND

1.    Plaintiff Andrew Clark ("Clark") initiated this action by filing his Complaint on June 25, 2019. (ECF No. 3.) On July 26, 2019, this matter was

designated as a complex business case (Designation Order, ECF No. 1) and assigned to the undersigned (Assignment Order, ECF No. 2).

2. In the Complaint, Clark alleges: a claim against Jared Burnette (hereinafter "Burnette") for breach of contract (First Claim); in the alternative, a claim against Burnette for *quantum meruit* (Third Claim); and in the alternative, claims against both Burnette and JBAC Properties, LLC (hereinafter "JBAC") for declaratory judgment (Second Claim) and judicial dissolution pursuant to N.C.G.S. § 57D-6-02 (Fourth Claim). ("Complaint," ECF No. 3.)

3. On August 20, 2019, Defendants filed the Motion to Dismiss (ECF No. 13) and a Memorandum in Support of Motion to Dismiss (ECF No. 14). On September 6, 2019, Clark filed a Response in Opposition to Defendants' Motion to Dismiss. (ECF No. 19.) Defendants did not file a reply brief.

4. The Court held a hearing on the Motion to Dismiss on October 29, 2019, at which the Court heard oral arguments from counsel. The Motion to Dismiss is now ripe for disposition.

II. FACTS

5. The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rules"), but only recites those facts that are relevant to the Court's determination of the Motion to Dismiss. *See, e.g.*, *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). The Court may consider documents which are the subject of the complaint and to which the complaint specifically refers, including the contract that

forms the subject matter of the action. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001). The facts relevant to determination of the Motion to Dismiss are drawn from the Complaint and those documents referred to in the Complaint.

6. Plaintiff Clark is a citizen and resident of Wake County, North Carolina.

7. Defendant Burnette is a citizen and resident of Wake County, North Carolina.

8. On December 8, 2011, Clark and Burnette formed Defendant JBAC, a North Carolina limited liability company. (ECF No. 3, at ¶¶ 3, 7.) Clark and Burnette are the only members of JBAC. JBAC is in the business of owning and operating rooming houses and other rental properties in Raleigh, North Carolina. (*Id.* at ¶ 21.)

9. Between December 8, 2011 and November 16, 2012, JBAC acquired 21 parcels of real property. (*Id.* at ¶ 9.)

10. On November 16, 2012, Clark and Burnette executed a written operating agreement for JBAC ("Operating Agreement"). (*Id.* at ¶ 8; Operating Agreement, ECF No. 14.1.) The Operating Agreement states that Clark is "[p]rimarily responsible for Collections, Property Maintenance and day to day operations," and that Burnette is "[p]rimarily responsible for Acquiring, Financing, and Strategic Direction of Investments." (ECF No. 3, at ¶¶ 10–11; ECF No. 14.1, at Art. 5.03(h).)

11. Article 13.04 of the Operating Agreement provides, in relevant part, as follows:

> Jared Burnette . . . has taken on a greater amount of personal loans to purchase real property for the benefit of the Company as outlined on the attached Exhibit "A". Andrew Clark . . . has also contributed capital to the Company as outlined in Exhibit "A". . . . As Burnette has a greater upfront investment in the Company, Burnette and Clark agree that in the event Clark withdraws or is otherwise removed as a Member-Manager as described herein and/or the Company dissolves, then Clark shall be entitled to a share of the assets of the Company as described in paragraph Article 16 herein.

(ECF No. 14.1, at Art. 13.04.)

12. Article 16 of the Operating Agreement addresses the winding up, liquidation, and distribution of assets upon the dissolution of JBAC. Article 16.03(b)(3) provides:

> In the event Clark elects to dissolve [JBAC]: Burnette shall have at his sole election the rights to keep all existing real estate. In determining the amount to be allocated to Clark, the Members agree that Clark shall receive one-half (1/2) of the value of the properties listed on Exhibit "A" at the acquisition price (initial value) shown on Exhibit "A" (after deducting any and all liens or mortgage or Deeds of Trust that encumber the properties or any other debts of [JBAC]) and NOT of the current fair market value "FMV" of the properties at the time of the Withdrawel [sic] or Dissolution as described in this Operating Agreement.

(ECF No. 3, at ¶ 29; ECF No. 14.1, at Art. 16.03(b)(3).) Even though Article 16.03(b)(3) references a list of properties and their values that are supposedly enumerated in Exhibit A, Exhibit A to the Operating Agreement is actually a document purporting to list Clark and Burnette's respective initial contributions to and ownership units in JBAC—it does not list any properties or values. (ECF No. 3,

at ¶¶ 30–31; ECF No. 14.1, at Ex. A.)  The Operating Agreement does not have an attachment listing any properties or values.

13.     Despite the terms of Article 16.03(b)(3), Clark alleges that both before and after executing the Operating Agreement, Burnette stated that he and Clark were "50/50 partners" in JBAC.  (ECF No. 3, at ¶¶ 18–20.)  Burnette also stated that he and Clark would "shar[e] in risk and gain" in JBAC.  (*Id.* at ¶ 18.)

14.     Clark "has devoted the majority of his time [ ] working" for JBAC since February 2012.  (*Id.* at ¶ 13.)  Clark "has continuously performed his duties under the [O]perating [A]greement by, amongst other things" leasing JBAC's properties, collecting rent from tenants, performing maintenance and repairs on JBAC's properties and arranging for outside vendors to provide maintenance and repairs when needed, and providing a variety of services to tenants.  (*Id.* at ¶ 12.)

15.     On the other hand, Burnette "has devoted little effort to JBAC since October, 2013 that has resulted in any tangible benefit to JBAC."  (*Id.* at ¶ 14.)  Burnette "has not caused JBAC to acquire property since 2013."  (*Id.* at ¶ 26.)  As a result, "JBAC is currently losing money," "many of its properties are in need of repair," and "the business is not operating at capacity."  (*Id.* at ¶ 22.)  Clark alleges that despite JBAC's current circumstances, Burnette "refuses to modify the strategic direction of JBAC."  (*Id.* at ¶ 27.)  Clark also alleges that Burnette "has effectively abandoned JBAC."  (*Id.* at ¶ 33.)  Additionally, Clark alleges that, due to Burnette's inaction, Clark had to invest approximately $55,000.00 into JBAC as additional capital in order for JBAC to meet its financial obligations.  (*Id.* at ¶¶ 41–42.)

16.     Nevertheless, the properties that JBAC currently owns are worth in excess of three million dollars. (*Id*. at ¶ 28.)

17.     Clark alleges that Burnette "breached the [O]perating [A]greement by *inter alia* failing to take any affirmative steps to acquire, or successfully strategically direct JBAC's investments." (*Id*. at ¶ 39.) Although Clark seeks dissolution of JBAC, he contends that, because Burnette breached the Operating Agreement, he should not be permitted to enforce Articles 13.04 and 16.03(b)(3) of the Operating Agreement; it would be unfair for Clark to receive only half of the acquisition price of JBAC's properties, and not half of the current fair market value of the properties. (*Id*. at ¶ 34.)

III.    STANDARD OF REVIEW

18.     Pursuant to Rule 12(b)(6), Defendants move to dismiss Clark's claim for breach of contract and the alternative claims for *quantum meruit* and declaratory judgment for failure to state a claim upon which relief may be granted. Defendants do not seek dismissal of Clark's claim for judicial dissolution of JBAC.

19.     In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). North Carolina is a notice pleading state. *See Feltman v. City of Wilson*, 238 N.C. App. 246, 252, 767 S.E.2d 615, 620 (2014) ("Under notice pleading, a statement of claim is adequate if it gives sufficient notice

of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of res judicata, and to show the type of case brought.") (quoting *Wake Cty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 646, 762 S.E.2d 477, 486 (2014)).

20.     "It is well established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018) (quoting *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)).  In deciding a motion to dismiss, the court must construe the complaint liberally and accept all well-pleaded allegations as true.  *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).  The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation and quotation marks omitted).

21.     Applying these standards, the Court will first address Clark's claim for breach of contract and then turn to Clark's alternative claims for *quantum meruit* and declaratory judgment.

## IV.  ANALYSIS

22.  As a preliminary matter, the Court notes that, with their Memorandum in Support of Motion to Dismiss, Defendants filed a document that is not attached to nor referred to in the Complaint.  (Emails, ECF No. 14.2.)  The document is a matter outside of the pleadings, and the Court declines to consider the document.  N.C.G.S. § 1A-1, Rule 12(b).

### A.  Breach of Contract

23.  Clark alleges that Burnette "breached the [O]perating [A]greement by *inter alia* failing to take any affirmative steps to acquire, or successfully strategically direct JBAC's investments."  (ECF No. 3, at ¶ 39.)[1]  Clark further alleges that he has been damaged by the breach.  (*Id.* at ¶ 43.)

24.  In support of the Motion to Dismiss, Burnette argues that the terms of the Operating Agreement are unambiguous, and "Clark has failed to allege a claim for breach of contract" because "the Operating Agreement does not bind Mr. Burnette to purchase anything" and "there is no provision in the Operating Agreement that binds Mr. Burnette to take any specific actions with respect to company investments." (ECF No. 14, at pp. 5–6.)  Defendants contend that Clark merely alleges that he disagrees with Burnette's "investment decisions."  (*Id.* at p. 6.)

25.  "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract."  *Poor v. Hill*, 138 N.C. App. 19,

---

[1] The Operating Agreement constitutes a contract between Clark and Burnette.  *See* N.C.G.S. § 57D-2-30(e); *N.C. State Bar v. Merrell*, 243 N.C. App. 356, 370, 777 S.E.2d 103, 114 (2015) ("An operating agreement is a contract . . . .").

26, 530 S.E.2d 838, 843 (2000). It is well-established that "a valid contract between two parties can only exist when the parties assent to the same thing in the same sense, and their minds meet as to all terms." *Normile v. Miller*, 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985) (internal quotation marks omitted). "[W]here the complaint alleges each of these elements, it is error to dismiss a breach of contract claim under Rule 12(b)(6)." *Woolard v. Davenport*, 166 N.C. App. 129, 134, 601 S.E.2d 319, 322 (2004).

26. "With all contracts, the goal of construction is to arrive at the intent of the parties when the contract was issued. The intent of the parties may be derived from the language in the contract." *Bank of Am., N.A. v. Rice*, 230 N.C. App. 450, 456, 750 S.E.2d 205, 209 (2013) (citation omitted); *see also Lane v. Scarborough*, 284 N.C. 407, 409–10, 200 S.E.2d 622, 624 (1973) ("Whenever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties at the moment of its execution."). The intention of the parties "is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Lane*, 284 N.C. at 410, 200 S.E.2d at 624 (quoting *Electric Co. v. Ins. Co.*, 229 N.C. 518, 520, 50 S.E.2d 295, 297 (1948)). In analyzing the intent of the parties "[t]he court must construe the contract 'as a whole' and [its provisions] must be appraised in relation to all other provisions." *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008) (citation omitted). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are

to be ascertained from the language used in the instrument." *Bank of Am., N.A.*, 230 N.C. App. at 456, 750 S.E.2d at 209 (quoting *Stovall v. Stovall*, 205 N.C. App. 405, 410, 698 S.E.2d 680, 684 (2010)).

27. "When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court and the court cannot look beyond the terms of the contract to determine the intentions of the parties." *Bank of Am., N.A*, 230 N.C. App. at 456, 750 S.E.2d at 209 (citation omitted); *see also Lynn v. Lynn*, 202 N.C. App. 423, 431, 689 S.E.2d 198, 205 (2010). "Whether or not the language of a contract is ambiguous . . . is a question for the court to determine." *Lynn*, 202 N.C. App. at 432, 689 S.E.2d at 205 (citation omitted).

28. Defendants do not dispute that Clark alleges the existence of a contract. Defendants contend that Clark fails to allege a breach because the language of Article 5.03(h) is unambiguous and does not obligate Burnette to take any particular action, but merely makes him "responsible for Acquiring, Financing, and Strategic Direction of Investments." (ECF No. 14.1, at Art. 5.03(h).)

29. The purpose for the formation of JBAC appears to be to facilitate a business venture between Clark and Burnette for the purpose of owning real property on which they would operate rental properties. The subject matter of the Operating Agreement is the rights and obligations of Clark and Burnette, respectively, in carrying out their business relationship. Article 5.03(h) places on Burnette the duty of "[a]cquiring" and "[f]inancing" JBAC's "investments." (ECF No. 14.1, at Art. 5.03(h).) Since the Operating Agreement refers to a group of properties JBAC already

acquired at the time Clark and Burnette entered into the agreement (*Id.* at Art. 13.04, Art. 16.03(b)(3)), the use of "acquiring" and "financing" could reflect the parties' intent that Burnette would have an ongoing obligation to seek out and acquire additional properties in the future. Construing the Operating Agreement as a whole, and considering "the expressions used, the subject matter, . . . the purpose sought, and the situation of the parties at the time," the Court cannot conclude that Article 5.03(h) is clear and unambiguous regarding Burnette's obligations to JBAC under the Operating Agreement. *W & W Partners, Inc. v. Ferrell Land Co., LLC*, 2018 NCBC LEXIS 52, at *11 (N.C. Super. Ct. May 22, 2018) (citing *Electric Co.*, 229 N.C. at 520, 50 S.E.2d at 297).

30. The Court finds that the Plaintiff has sufficiently alleged a claim for breach of contract. Therefore, the Court concludes that the Motion to Dismiss the breach of contract claim should be DENIED.

**B.** ***Quantum Meruit***

31. Alternatively, Clark alleges a claim for *quantum meruit* against Burnette. Clark argues that he "furnished . . . labor, time, and expertise for the use and benefit of Defendant," that Burnette accepted this labor without objection, and Clark did not supply his labor gratuitously. (ECF No. 3, at ¶¶ 51, 53, 54.) Finally, Clark alleges that Burnette "has failed or refused to modify the oppressive terms of the . . . [O]perating [A]greement in a way that would fairly protect and compensate Plaintiff for the value of [his] labor, time, and expertise." (*Id.* at ¶ 55.)

32.     Defendants argue that Clark cannot state a claim for *quantum meruit* because the Complaint alleges the existence of an express contract—the Operating Agreement. (ECF No. 14, at p. 7.) Additionally, Defendants assert that the *quantum meruit* claim fails because Clark alleges that Burnette did not benefit from Clark's efforts. (ECF No. 14, at p. 8.) In support of this argument, Defendants cite to the allegation in the Complaint that "JBAC is currently losing money, as many of its properties are in need of repair, and the business is not operating at capacity." (ECF No. 14, at p. 8; ECF No. 3, at ¶ 22.)

33.     "*Quantum meruit* operates as an equitable remedy based upon a quasi contract or a contract implied in law which provides a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment." *Ron Medlin Constr. v. Harris*, 364 N.C. 577, 580, 704 S.E.2d 486, 489 (2010) (internal quotation marks omitted). "To recover in *quantum meruit*, plaintiff must show: (1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." *Envtl. Landscape Design Specialist v. Shields*, 75 N.C. App. 304, 306, 330 S.E.2d 627, 628 (1985).

34.     "In addition, '*quantum meruit* claims require a showing that both parties understood that services were rendered with the expectation of payment.'" *Wing v. Town of Landis*, 165 N.C. App. 691, 693, 599 S.E.2d 431, 433 (2004) (quoting *Scott v. United Carolina Bank*, 130 N.C. App. 426, 429, 503 S.E.2d 149, 152 (1998)). This does not mean that the plaintiff alone had an expectation of compensation, but that the defendant understood that it was expected to compensate

the plaintiff for the services. *Twiford v. Waterfield*, 240 N.C. 582, 585, 83 S.E.2d 548, 551 (1954) ("The *quantum meruit* must rest upon an implied contract. It must be made to appear that at the time the services were rendered, payment was intended on the one hand and expected on the other.") (internal citation and quotation marks omitted); *see also Snow v. East*, 96 N.C. App. 59, 63, 384 S.E.2d 689, 692 (1989).

35. However, where an express contract exists covering the same subject matter, a claim for *quantum meruit* must fail. *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962) ("[A]n express contract precludes an implied contract with reference to the same matter.").

36. Although Clark alleges that the Operating Agreement is a valid contract, he also seeks a declaratory judgment that at least parts of the Operating Agreement are void or voidable. (ECF No. 3, at ¶ 48.) In addition, Clark expressly pleads the *quantum meruit* claim "in the alternative" to the claim for breach of contract. (*Id.* at ¶ 50.) A plaintiff is permitted to plead claims in the alternative in North Carolina. N.C.G.S. § 1A-1, Rule 8(e)(2) ("A party may set forth two or more statements of a claim or defense alternatively . . . . A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both."). This rule applies to claims for breach of contract and *quantum meruit*. *Bandy v. Gibson*, 2017 NCBC LEXIS 66, at *11 (N.C. Super. Ct. July 26, 2017) ("It is well-established that liberal pleading rules permit pleading in the alternative, and that breach of express contract and quantum merit theories may be pursued in the complaint even if plaintiff may not ultimately be able

to prevail on both.") (citing *James River Equip., Inc. v. Mecklenburg Utils., Inc.*, 179 N.C. App. 414, 419, 634 S.E.2d 557, 560 (2006)).

37. At this juncture, the Court concludes that the claims for breach of contract and *quantum meruit* are properly and expressly pleaded as alternative claims. Therefore, the Motion to Dismiss the alternative claim for *quantum meruit* should be DENIED.

## C. Declaratory Judgment

38. As another alternative claim, Clark seeks a declaratory judgment against the Defendants declaring that:

    a.    Burnette has failed to fulfill his obligations under Article 5.03(h) of the Operating Agreement and that failure constitutes a breach of the Operating Agreement;

    b.    Article 16.03(b)(3) of the Operating Agreement is voided because it is inconsistent with Burnette's intention to share equally in the profits and losses of JBAC with Clark;

    c.    Article 16.03(b)(3) of the Operating Agreement is voided because it is substantively and procedurally unconscionable;

    d.    Article 16.03(b)(3) of the Operating Agreement is voided because the Exhibit A referred to does not appear to exist;

    e.    The Operating Agreement is not the entire agreement of the parties;

    f.    Burnette had obligations under the Operating Agreement of "Acquiring, Financing, and Strategic Direction of Investments," and

Burnette has failed to fulfill his obligations under the Operating Agreement; and

g. Clark had obligations under the Operating Agreement of "Collections, Property Maintenance and day to day operations," and he satisfactorily fulfilled his obligations under the Operating Agreement.

(ECF No. 3, at ¶ 48.)

39. Under North Carolina law, a declaratory judgment is a statutory remedy that grants the courts authority to "declare rights, status, and other legal relations" when an "actual controversy" exists between parties to a lawsuit. N.C.G.S. § 1-253; *Town of Pine Knoll Shores v. Carolina Water Serv.*, 128 N.C. App. 321, 321, 494 S.E.2d 618, 618 (1998). The Court may, by declaratory judgment, "determine[ ] any question of construction or validity" and declare "rights, status or other legal relations" under a written contract. N.C.G.S. § 1-254. "As with all other actions, . . . there must be a justiciable controversy before the Declaratory Judgment Act may be invoked. There is a justiciable controversy if litigation over the matter upon which declaratory relief is sought appears unavoidable." *Ferrell v. Department of Transp.*, 334 N.C. 650, 656, 435 S.E.2d 309, 313 (1993). An action for declaratory judgment is ripe for adjudication when "there is an actual or real existing controversy between parties having adverse interests in the matter in dispute." *Andrews v. Alamance Cty.*, 132 N.C. App. 811, 813–14, 513 S.E.2d 349, 350 (1999).

40. A motion to dismiss under Rule 12(b)(6) "is seldom an appropriate pleading in actions for declaratory judgments, and will not be allowed simply because the plaintiff may not be able to prevail. It is allowed only when the record clearly shows that there is no basis for declaratory relief as when the complaint does not allege an actual, genuine existing controversy." *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 439, 206 S.E.2d 178, 182 (1974).

41. Defendants first argue that the Court should dismiss the declaratory judgment claim because "Clark attempts to use this cause of action to have the Court rewrite the Operating Agreement." (ECF No. 14, at p. 9.) Defendants contend that Clark seeks an order declaring that Article 16.03(b)(3) is void or unenforceable because that provision does not reflect the parties' intent to share equally in JBAC's profits and does not adequately compensate him for the current market value of JBAC's properties. (*Id.* at pp. 11–12.) A declaratory judgment action is not "a vehicle for the nullification of [written] instruments." *Farthing v. Farthing*, 235 N.C. 634, 635, 70 S.E.2d 664, 665 (1952); *Integon Nat'l Ins. Co. v. Helping Hands Specialized Transp., Inc.*, 233 N.C. App. 652, 658, 758 S.E.2d 27, 32–33 (2014) (holding that a declaratory judgment action does not provide courts with authority to "change the terms of [an automobile liability insurance] policy," but only to interpret those provisions).

42. Some of the declarations Clark seeks appear to be requests for the Court to nullify provisions in the Operating Agreement and rewrite the contract. (*See, e.g.*, ECF No. 3, at ¶¶ 48 (b), (c).) Nevertheless, Clark also seeks declarations that he has

fulfilled his obligations under Article 5.03(h) of the Operating Agreement, that Burnette has failed to fulfill his obligations, and that Article 16.03(b)(3) is void or unenforceable because there is no list of properties and acquisition costs attached to the Operating Agreement. (*Id.* at ¶¶ 48(a), (d)–(g).) These constitute proper requests for interpretation of a contract and a declaration of rights, duties, and liabilities as between the parties under the Operating Agreement that would sustain a claim for declaratory judgment. *See Morris v. Plyler Paper Stock Co.*, 89 N.C. App. 555, 557, 366 S.E.2d 556, 558 (1988) ("A claim for declaratory relief is sufficient if the complaint alleges the existence of a real controversy arising out of the parties' opposing contentions and respective legal rights under a deed, will or contract in writing.").

43. Alternatively, Defendants ask that the Court decline to exercise its discretionary jurisdiction over the declaratory judgment action pursuant to N.C.G.S. § 1-257 because Clark's claims "lack merit." (ECF No. 14, at p. 9.) The decision to grant or deny a claim for declaratory judgment lies within the discretion of the trial court. *Coca-Cola Bottling Co. Consol. v. Durham Coca-Cola Bottling Co.*, 141 N.C. App. 569, 578, 541 S.E.2d 157, 163 (2000). Since the Court already has decided that it would be premature to dismiss Clark's declaratory judgment claim, the Court will not exercise its discretion to deny the declarations and dismiss the claim at this time.

44. Under these circumstances, the Court concludes that Defendants' Motion to Dismiss the claim for declaratory judgment should be DENIED at this time.

V. CONCLUSION

45. THEREFORE, IT IS ORDERED that the Motion to Dismiss is DENIED.

SO ORDERED, this the 28th day of January, 2020.


                         /s/ Gregory P. McGuire

                         Gregory P. McGuire
Special Superior Court Judge
for Complex Business Cases