GOULD MORRIS ELECTRIC COMPANY v. ATLANTIC FIRE INSURANCE CO.

(Filed 24 November, 1948.)

**1. Insurance § 43b—**

A policy insuring specified goods while in transit "against loss or damage directly caused by . . . collision of the conveyance on which the goods are carried . . . derailment, overturning of trucks or collapse of bridges," *is held* to cover damage to the topmost articles on the load protruding above the top of the truck resulting when the articles collided with an overhead concrete bridge under which the truck was driven.

**2. Insurance § 43a—**

If a policy of insurance prepared by insurer is reasonably susceptible to two interpretations, the one imposing liability, the other excluding it, the former is to be adopted and the latter rejected.

**3. Insurance § 43b—**

Where a policy insures against loss or damage to a cargo of goods while in transit, the enumeration of the methods by which loss or damage usually occurs will not be construed as a limitation of liability when such construction is contrary to the mutual intent of the parties as gathered from the language of the instrument as a whole.

**4. Contracts § 8—**

The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.

APPEAL by plaintiff from *Edmundson, Special Judge,* April Term, 1948, of WAKE.

Civil action to recover on contract of insurance.

The plaintiff, desiring to transport a truck load of water heaters from Nashville, Tenn., to Raleigh, N. C., on or about 4 November, 1947, ap-

plied to the defendant for insurance to protect the cargo against loss or damage while in transit.

On the face of the policy appears the following:

"Trip Transit Policy

"Atlantic Fire Insurance Company

"Amount $2500.00 . . . Premium $25.00

"In consideration of the stipulations herein named . . .

1. "Does insure Gould Morris Electrical Co. . . . on shipment of lawful goods and merchandise consisting principally of water heaters . . .

2. "This insurance attaches from the time the goods or merchandise leave . . . initial point of shipment and covers continuously thereafter while in due course of transit until safely delivered . . .

3. "This policy insures . . .

"Against loss or damage directly caused by fire, lightning, cyclone, tornado . . . collision of the conveyance on which the goods are carried . . ., derailment, overturning of trucks or collapse of bridges."

After the pleadings were filed, the parties agreed upon the facts and submitted the case to the court for determination without the intervention of a jury.

It is stipulated: That the cargo of 26 electric water heaters, packed in crates, was loaded on plaintiff's open-body truck; that four of the topmost heaters protruded above the top of the truck, and that plaintiff's employees took a tarpaulin, which was no part of the truck, and covered the cargo by tying it to the body of the truck. And further, that while in transit, the truck was driven under an overhead concrete bridge and the four topmost heaters, covered with the tarpaulin, were damaged to the extent of $215.48 when they collided with the under side of the bridge.

The court being of opinion that the policy in suit did not cover the stipulated damage or loss, entered judgment dismissing the action, from which the plaintiff appeals, assigning error.

*Harris & Poe for plaintiff, appellant.*

*J. L. Emanuel for defendant, appellee.*

STACY, C. J. In the court below, and here, the parties have selected the proper construction of the phrase "collision of the conveyance on which the goods are carried" as the battleground of debate and the crucial question for decision.

While this language, standing alone and strictly construed, might limit liability to a collision of the conveyance itself and not extend to a collision of the load on the truck, as held below, we regard the interpretation too restrictive under all the terms of the policy.

In the first place, the policy is a single "Trip Transit Policy," which within itself implies protection to the property while in transit on the particular trip. The purpose of the policy was to insure the cargo, not the truck, while in transit from Nashville, Tenn., to Raleigh, N. C. Undoubtedly the plaintiff thought it had such insurance.

Secondly, it insures against loss or damage to specific items of property, *i.e.*, water heaters, and not against loss or damage to goods or merchandise generally. Thus, the parties knew, from the amount of insurance and the character of the shipment, that, in all probability, portions of the cargo would extend above the top of the truck.

Thirdly, whether the enumeration of the usual causes of loss or damage in the third paragraph of the policy was intended as enlargements or limitations on the liability declared in the first two paragraphs is not altogether clear. Hence, the construction favorable to the insured and consistent with the purpose for which the policy was issued becomes pertinent. *Jones v. Casualty Co.,* 140 N. C. 262, 52 S. E. 578.

Policies of liability insurance, like all other written contracts, are to be construed and enforced according to their terms. If plain and unambiguous, the meaning thus expressed must be ascribed to them. But if they are reasonably susceptible of two interpretations, the one imposing liability, the other excluding it, the former is to be adopted and the latter rejected, because the policies having been prepared by the insurers, or by persons skilled in insurance law and acting in the exclusive interest of the insurance company, it is but meet that such policies should be construed liberally in respect of the persons injured, and strictly against the insurance company. *Roberts v. Ins. Co.,* 212 N. C. 1, 192 S. E. 873, 113 A. L. R. 310; *Underwood v. Ins. Co.,* 185 N. C. 538, 117 S. E. 790; *Bray v. Ins. Co.,* 139 N. C. 390, 51 S. E. 922; *Bank v. Ins. Co.,* 95 U. S. 673.

Here, the policy on its face insures against loss or damage to the cargo while in transit, and the enumeration of the methods by which loss or damage usually occurs was intended primarily as a description of the ordinary ways and means of sustaining loss or damage, rather than a limitation of liability. That such was the mutual intent and within the contemplation of the parties is readily gathered from the language of the instrument as a whole. *Jones v. Realty Co.,* 226 N. C. 303, 37 S. E. (2) 906. The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time. *Jones v. Casstevens,* 222 N. C. 411, 23 S. E. (2) 303.

The above interpretation finds support in at least two cases where similar policies were under consideration, one a Michigan case, *C. & J. Commercial Driveway, Inc., v. Fidelity & Guaranty Fire Corp.,* 258

Mich. 624, 242 N. W. 789, and the other a Pennsylvania case, *Burks County Const. Co. v. Alliance Ins. Co.,* 162 Pa. Sup. 153, 56 A. (2) 338.

The cases cited in support of a contrary view, one a Nebraska case, *Barish-Sanders Motor Co. v. Firemen's Fund Ins. Co.,* 134 Neb. 188, 278 N. W. 374, and the other a Massachusetts case, *Mendelsohn v. Automobile Ins. Co.,* 290 Mass. 228, 195 N. E. 104, are distinguishable by reason of variant clauses or factual differences. But, if not, a conflict in the authorities results which gives added emphasis to the suggestion that an ambiguity in a written contract should be inclined against the party who prepared the writing. *Wilkie v. Ins. Co.,* 146 N. C. 513, 60 S. E. 427.

On the record as submitted, the judgment should have been for the plaintiff.

Reversed.