INDUSTRIAL METAL TREATING CORPORATION v. T & D REALTY
    COMPANY, INC., GEORGE A. TRAKAS, AND GEORGE DIA-
    MADUROS

No. 7626SC218

(Filed 15 September 1976)

**Landlord and Tenant § 17— leased premises destroyed by fire — duty of
lessor to restore**

> Where the premises leased by the corporate defendant to plaintiff
> were so badly damaged by fire as to be rendered wholly unfit for
> occupancy by plaintiff, defendant was obligated by the terms of the
> lease agreement to restore the leased premises provided that they
> could be restored with reasonable diligence within 120 working days.

APPEAL by plaintiff from *Martin (Harry C.), Judge.* Judgment entered 7 November 1975 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 10 June 1976.

This is a civil action in which plaintiff seeks to recover damages for breach of an agreement in a lease to restore premises which were destroyed by fire.

On 21 September 1964 the corporate defendant, T & D Realty Company, Inc., as lessor, and plaintiff, as lessee, executed a written lease on a parcel of land in Charlotte, N. C., by which T & D agreed at its expense to construct on the land a 9,000 square foot one-story building and to complete the building within 120 working days of the signing of the lease. This was done, and plaintiff entered into occupancy of the building as lessee.

The term of the lease began on 1 January 1965 and extended for ten years from that date, with the lessee being granted an option to renew for an additional five years. By a separate instrument, which was dated and executed on the same day as the lease, the plaintiff was granted an option to purchase the lands and premises described in the lease at an option price which started at $60,000.00 and declined each year after the fifth year of the lease. Plaintiff continued in possession of the leased premises as lessee of T & D until 25 June 1973, when the leased building was so badly damaged by fire as to render it wholly unfit for occupancy.

Paragraphs 12, 13, and 14 of the lease are as follows:

"12. *Partial Destruction by Fire or Other Casualty.*
If the premises hereby leased shall be partially damaged

by fire or other casualty at any time during the same term, the same shall be repaired and restored as speedily as possible at the expense of the Lessor, and a proportionate reduction of rent shall be allowed to the Lessee for the time occupied in such repairs, excepting:

A. If the Lessee can use and occupy the demised premises without substantial inconvenience, there shall be no reduction of rent.

B. If said repairs are delayed because of the failure of the Lessee to adjust its own insurance, no reduction shall be made beyond a reasonable time allowed for such adjustment.

13. *Complete Destruction by Fire or Other Casualty.* If the premises hereby leased are so badly damaged by fire or other casualty, or any contingency beyond the control of the Lessor, as to render the same wholly unfit for occupancy by the Lessee, and if the premises cannot be restored with reasonable diligence within one hundred twenty (120) working days after the commencement of actual work, then this lease may be terminated within the period of thirty (30) days after such disaster, by either party, on written notice to the other; whereupon, the Lessee shall surrender the premises and shall not be liable for any further rental, and the Lessor shall refund any unearned rent paid by the Lessee calculated at a daily rate based on the regular monthly rental.

14. *Loss by Fire.* In the event that all or any portion of the building or buildings located upon the leased premises are destroyed by fire, Lessee shall not be held liable by the Lessor for any loss by fire to any part or all of said building or buildings located upon the leased premises unless such loss results from the negligence of the Lessee, its agents, servants, employees, invitees, or licensees, and then only to the extent of the actual loss incurred by Lessor reduced by any payments received by Lessor from fire insurance carried on the leased premises."

Other paragraphs of the lease will be referred to in the opinion.

By letter dated 28 June 1973, plaintiff, contending that the premises could be restored within reasonable diligence within

120 working days, called upon T & D to do so. T & D refused and instead, by letter dated 2 July 1973, notified plaintiff that it was terminating the lease pursuant to paragraph 13 of the lease agreement.

On 31 July 1973 plaintiff filed this action, originally against T & D as the sole defendant, and alleged in its complaint facts substantially as above set forth. Subsequently, the two individual defendants were joined as additional parties, and plaintiff filed an amended complaint in which it alleged in substance the following additional facts: that the individual defendants are the sole stockholders and directors of T & D, each owning 50% of the outstanding stock; that after this action was commenced, T & D received $47,500.00 from its fire insurer on account of the fire damage to the leased premises; that the fire insurance proceeds were disbursed by paying the mortgage on the premises, by paying the defendant Diamaduros $5,200.00 on a debt he claimed from T & D, and by disbursing the remaining insurance proceeds, approximately $26,000.00, equally to the two individual defendants; that such payments to the individual defendants were made without adequate consideration, without making adequate provision for creditors of T & D, and while T & D was insolvent; and that such distribution of assets of T & D constitutes a fraudulent conveyance by T & D and the individual defendants and a breach by the individual defendants of their responsibilities as directors and stockholders.

Defendants filed answer in which they admitted execution of the lease, erection of the building, and plaintiff's occupancy until 25 June 1973. Defendants admitted "that on that date the building was so badly damaged by fire as to render it wholly unfit for occupancy." Defendants denied the remaining material allegations of the plaintiff and alleged that the lease was terminated by T & D's letter to plaintiff dated 2 July 1973 when T & D "determined that under paragraph 13 of the Lease Agreement the premises could not be restored with reasonable diligence within 120 working days after the commencement of actual work."

At the trial, plaintiff presented evidence in support of its allegations. Defendants did not offer evidence. Defendants' mo-

tions for a directed verdict were denied, and issues were submitted to the jury and answered as follows:

"1. Could the leased premises be restored with reasonable diligence within one hundred twenty (120) working days?

ANSWER: Yes

2. If so, did defendant, T & D Realty Company, Inc., wrongfully fail to restore the leased premises?

ANSWER: Yes

3. What amount of damages, if any, is plaintiff, Industrial Metal Treating Corporation, entitled to recover from defendant, T & D Realty Company, Inc.?

ANSWER: $75,000

4. Did defendants, George A. Trakas and George Diamaduros, violate their duty as directors of defendant, T & D Realty Company, Inc., by paying its fund to themselves without making adequate provision for known obligations?

ANSWER: Yes

5. Did defendants, George A. Trakas and George Diamaduros, violate their duty as stockholders of defendant, T & D Realty Company, Inc., by receiving a distribution of funds from defendant, T & D Realty Company, Inc., whereby defendant, T & D Realty Company, Inc., would be rendered unable to meet its obligations?

ANSWER: Yes

6. Did defendants, George A. Trakas and George Diamaduros, fraudulently transfer funds from defendant, T & D Realty Company, Inc., to themselves, without permitting defendant, T & D Realty Company, Inc., to retain funds to pay its obligations?

ANSWER: Yes

7. Did defendants, George A. Trakas and George Diamaduros, completely dominate defendant, T & D Realty Company, Inc., as their mere instrumentality, and did they use the corporation to commit a wrong or unjust act in

violation of their duty to plaintiff, and cause harm to plaintiff?

ANSWER: Yes"

Defendants moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The court granted defendants' motion for judgment notwithstanding the verdict, but denied their alternative motion for a new trial. In denying the motion for a new trial, the court stated that it did so "on the grounds that in the event the ruling of this Court on defendants' Motion for Judgment Notwithstanding the Verdict is reversed on appeal, then the corporate defendant would be under the legal duty to repair or restore the building on the leased premises." Plaintiff appealed.

*Weinstein, Sturges, Odom, Bigger & Jones, P.A., by Maurice A. Weinstein and Richard A. Bigger, Jr., for plaintiff appellant.*

*McCartha & Bryant by C. Eugene McCartha, and Garland & Alala by Jerry G. Drum for defendant appellees.*

PARKER, Judge.

There was ample evidence to support the verdict. Therefore, the question presented by plaintiff's appeal is whether, under the facts as established by the verdict or by admissions in the pleadings, the corporate defendant was obligated by the lease agreement to restore the damaged building. We hold that it was, and accordingly we reverse the judgment n.o.v.

Under the facts established by the verdict or by admissions in the pleadings, neither party had a right to terminate the lease. Paragraph 13 of the lease granted that right only if two conditions should co-exist: (1) that the leased premises be so badly damaged by fire or other casualty as to render the same wholly unfit for occupancy by the lessee *and* (2) that the premises could not be restored with reasonable diligence within 120 working days after commencement of actual work. Existence of the first condition was admitted in the pleadings. As to the second, however, the jury found on competent evidence that the leased premises could be restored with reasonable diligence within 120 working days. Therefore, since one of the two conditions required to give rise to the right of termination did not exist, neither party had the right to terminate, and the corporate

defendant's attempt to do so was legally ineffectual. Thus, the question presented for our decision is whether the lease agreement imposed on the corporate defendant, as lessor, the duty to restore the leased premises in event (1) the premises were so badly damaged by fire as to be rendered wholly unfit for occupancy by the lessee, and (2) the premises could be restored with reasonable diligence within 120 working days. This question presents a problem of contract interpretation.

"The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Electric Co. v. Insurance Co.*, 229 N.C. 518, 520, 50 S.E. 2d 295, 297 (1948). "When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning." *Lane v. Scarborough,* 284 N.C. 407, 410, 200 S.E. 2d 622, 624 (1973).

"Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it. The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties, the parties being supposed to have made those stipulations which as honest, fair, and just men they ought to have been." 17 Am. Jur. 2d, Contracts, § 255, p. 649.

Applying the foregoing principles to the construction of the lease agreement before us in the present case, we note initially that at the time the lease was executed, the parties must have contemplated that only in unusual circumstances would it not be possible to restore the building within 120 working days. The lease provided that the lessor should build the building initially within that time period, and this was actually accomplished. Therefore, the parties must have con-

templated that under normal circumstances the termination provision in paragraph 13 would not become effective. Apparently that paragraph was included to take care of the possible, but unlikely, eventuality that abnormal conditions might exist in the building industry at the time a fire or other casualty should occur. Turning to other provisions in the lease, we find that paragraph 7 provides that the Lessor "shall pay . . . fire, windstorm, and hail insurance premiums on the leased premises." Even though the lease does not expressly specify the amount of such insurance to be carried, the reasonable implication is that it should be in a reasonable amount relative to the value of the property, the cost of the premiums, and the risk involved. Paragraph 14 provides that in event of fire, the Lessee is not to be held liable by the Lessor for any loss unless such loss results from the negligence of the Lessee "and then only to the extent of the actual loss incurred by Lessor reduced by any payments received by Lessor from fire insurance carried on the leased premises." Thus, the Lessee is under no liability for a fire loss not caused by its negligence, and even in that event the Lessee is to have full benefit of any insurance proceeds to reduce the extent of its liability. Paragraph 8 provides that the "Lessor shall maintain and keep in good repair the roof, outside walls, foundation, drainage, outside plumbing, electrical attachments and gas of the leased premises," while the Lessee is required only to maintain the "interior walls, floors and ceilings," to "take care of all damage, breakage and repairs to doors and outside windows," and to "bear the cost of maintenance and repair" of the toilet, heat and air conditioning, lighting, electric, water, and telephone utilities. Finally, and most importantly, paragraph 12 provides that if the leased premises shall be "partially" damaged by fire, "the same shall be repaired and restored as speedily as possible at the expense of the Lessor." Considering all of these provisions together, the clear implication of the lease agreement is that the Lessor is obligated to restore the building, at its expense and as speedily as possible, in case it is damaged by fire but not to such extent that it cannot be restored with reasonable diligence within 120 working days. Having expressed their respective obligations in substantial detail throughout the lease, it is simply not reasonable to assume that the parties intended to leave unprovided for the eventuality which actually occurred, that is, a damage to the building by fire to such extent as to render it wholly unfit for occupancy but not to such extent that it could not be

restored with reasonable diligence within 120 working days. A more reasonable interpretation is that the parties considered the building so damaged to be "partially damaged" within the meaning of paragraph 12 of the lease. There was evidence in the present case that after the fire the outside walls of the building were still usable, and for that reason the building could be considered as only "partially damaged," even though it was wholly unfit for occupancy. As the facts of this case demonstrate, a building need not be totally destroyed to be rendered wholly unfit for occupancy. We hold that the clear implication of the express language of the lease agreement is that the Lessor was obligated in this case to restore the building at its expense and as speedily as possible. For breach of that obligation, the corporate defendant became liable to the plaintiff.

The corporate defendant, T & D, has filed two cross assignments of error as follows: first, that the court erred in its additional instructions to the jury explaining the word "wrongfully," and second, that the court erred in denying T & D's alternative motion for a new trial. We have carefully examined each of these and find no error. The portion of the court's charge to which exception was taken, when considered contextually with the charge as a whole, was not prejudicial to defendants. Indeed, the court's charge may have been more favorable to defendants than they were entitled to receive in that the court placed the burden on plaintiff to show, on the second issue, that the defendants did not have a "good faith belief" that the building could not be restored with reasonable diligence within 120 working days and that the corporate defendant "did not make any good faith effort to secure other insurance upon the property." The corporate defendant was under a contractual duty to restore the building regardless of its ability or efforts to obtain other insurance and regardless of its subjective belief, whether held in good faith or not, as to how long a time would be required to restore the building. We find no error such as to warrant the granting of a new trial.

The result is:

The judgment granting defendants' motion for judgment notwithstanding the verdict is reversed.

The judgment denying defendants' alternative motion for a new trial is affirmed.

This cause is remanded to the Superior Court in Mecklenburg County for entry of judgment on the verdict.

Reversed in part, affirmed in part, and remanded.

Chief Judge BROCK and Judge ARNOLD concur.