Slaughter v. Winner Enters. of Carolina Beach, LLC, 2019 NCBC 1.

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>NEW HANOVER COUNTY | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>18 CVS 2809 |
| NICOLE B. SLAUGHTER,<br><br>    Plaintiff,<br><br>v.<br><br>WINNER ENTERPRISES OF<br>CAROLINA BEACH, LLC; and<br>WINNER CONSTRUCTION<br>GROUP, LLC,<br><br>    Defendants. | **ORDER AND OPINION ON<br>DEFENDANTS' MOTION TO DISMISS** |

THIS MATTER comes before the Court on Defendants Winner Enterprises of Carolina Beach, LLC ("Winner Enterprises") and Winner Construction Group, LLC's ("Winner Construction") (collectively Winner Enterprises and Winner Construction are referred to as "Defendants") Motion to Dismiss (N.C. R. Civ. P. 12(b)(1), 12(b)(6)). ("Motion", ECF No. 10.)

THE COURT, having considered the Motion, the briefs filed in support of and in opposition to the Motion, the evidentiary materials filed by the parties, the arguments of counsel at the hearing, and other appropriate matters of record, CONCLUDES, in its discretion, that the Motion should be GRANTED, in part, and DENIED, in part, in the manner and for the reasons set forth below.

*Ward and Smith, P.A., by John M. Martin and Thomas S. Babel, for Plaintiff Nicole Slaughter.*

*Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Robert J. King, and Daniel F. Smith, for Defendants Winner Enterprises of Carolina Beach, LLC and Winner Construction Group, LLC.*

McGuire, Judge.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

1.      Defendant Winner Enterprises is a North Carolina limited liability company that owns and rents developed and undeveloped commercial and residential property. (Compl., ECF No. 3, at ¶¶ 2–3.) Winner Enterprises was originally formed as a limited partnership owned by certain members of the Winner family: Martin T. Winner (31.5%) and his wife Elsie H. Winner (31.5%); their daughter E. Juanita Winner ("Juanita") (18.5%); and Juanita's son Troy Slaughter ("Troy") (18.5%). (*Id.* at ¶ 9.) On or about September 26, 2000, the limited partnership was converted to an LLC. (*Id.* at ¶ 7.) Winner Enterprises' Operating Agreement ("Operating Agreement") was executed on or about October 6, 2000. (*Id.* at ¶ 8.)

2.      Plaintiff Nicole Slaughter ("Nicole") married Troy in 1996. (*Id.* at ¶ 10.) In 2003, Nicole became a member of Winner Enterprises when Elsie Winner transferred 210,000 membership units in Winner Enterprises to Nicole. (*Id.* at ¶ 12.)

3.      In December of 2011, Troy "presented [Nicole] with a signature page pertaining to an amendment to the [Operating Agreement]. At that time, Troy represented to [Nicole] that the proposed amendment related to Juanita's estate planning." (*Id.* at ¶ 16.) Nicole signed the signature page, which was actually the signature page for the Second Amendment to the Operating Agreement. ("Second Amendment", ECF No. 10 at Ex. A.) Unbeknownst to Nicole, at the time Troy obtained Nicole's signature he was having an extra-marital affair and planning to leave the marriage. (ECF No. 3, at ¶ 19.)

4.      The Second Amendment states that its purpose was to "amend the qualifications of Members and Managers to restrict management and control of [Winner Enterprises] to certain family members." (ECF No. 10 at Ex. A, p. 1.) The Second Amendment modified the definition of "Member" in the Operating Agreement, in relevant part, to provide that it "means each Person designated as a [M]ember of [Winner Enterprises] on Schedule I hereto, . . . *provided, however, that [M]embers of [Winner Enterprises] entitled to act as provided in [Sections 3.5, 3.6, 3.8, 6.5, 6.6, 6.7, 10.4, 10.5, 11.1, 11.3, and 12.5 of the Operating Agreement] are restricted to any Persons who are direct descendants or the spouses of direct descendants of Martin T. Winner and Elsie H. Winner*" (hereinafter, this defined group will be referred to as "Direct Descendant(s) and Spouse(s)"). (*Id.* at pp. 1–2 (modified language emphasized).) Nicole was listed as a Member on the Schedule I in effect at the time of the Second Amendment, and was the Spouse of Troy, a Direct Descendant.

5.      The Second Amendment also amended the definition of "Majority in Interest" in the Operating Agreement to "mean[ ] a combination of any group of Members who, in the aggregate, represent the owners of more than fifty percent (50%) of the Membership Interests owned by all Members, *except that no Members shall be counted as part of a Majority in Interest who are not [Direct Descendants and Spouses].*" (*Id.* at p. 3 (modified language emphasized).) The Second Amendment modified the definition of "Person," in relevant part, to provide that a Person is restricted to Direct Descendants and Spouses. (*Id.* at p. 1.)

6.     Finally, the Second Amendment added a new provision to the Operating Agreement, Section 10.2(l), restricting Members of Winner Enterprises from transferring or selling their membership interest to anyone other than Direct Descendants and Spouses. (*Id*. at p. 2.) The Operating Agreement had previously permitted the transfer of membership interests to persons outside of Direct Descendants and Spouses. (*Id*. at pp. 32–33.)

7.     On May 18, 2012, Troy separated from Nicole ("the Separation"), and Nicole and Troy divorced on August 30, 2013. (ECF No. 3, at ¶¶ 20–21.) At the time of the divorce, Nicole still owned 210,000 membership units in Winner Enterprises. (*Id*. at ¶¶ 22, 23.)

8.     After the Separation, Troy began converting Winner Enterprises funds to his own personal use and taking other actions for his personal benefit and to the detriment of Winner Enterprises. (*Id*. at ¶¶ 27–40.) Since the Separation, Winner Enterprises has not made any distributions to Nicole, and she has not been able to "receive any financial benefits from Winner." (*Id*. at ¶ 44.)

9.     Nicole alleges that "the effect of [the Second Amendment] was to revoke all rights of [Nicole] as a Member of Winner [Enterprises] in the event of a divorce," including prohibiting her from selling her membership interest in Winner Enterprises to anyone other than Direct Descendants and Spouses. (*Id*. at ¶ 18.)

10.     During January and February 2016, the Honorable Lillian B. Jordan held a hearing in *Slaughter v. Slaughter*, New Hanover County District Court, 2013 CVD 1301, on Nicole's and Troy's claims arising from the divorce for equitable

distribution, child support, and alimony (the "Equitable Distribution Action"). (*Id.* at ¶ 36; ECF No. 3 at Ex. 1, p. 1.) Nicole alleges that during the trial in the Equitable Distribution Action, "Troy admitted under oath that neither he nor Winner [Enterprises] would purchase [Nicole's] membership interest in Winner [Enterprises], and [sic] that he would not allow [Nicole] to receive any distributions or financial benefits from Winner [Enterprises]." (ECF No. 3, at ¶ 41.) Nicole further alleges that since the date of the Separation, "[she] has received no financial benefits, including any direct or indirect distributions from Winner [Enterprises]." (*Id.*)

11. On March 25, 2016, Judge Jordan issued an "Equitable Distribution Judgment and Order" ("Divorce Order"). (*Id.* at ¶ 42; ECF No. 3 at Ex. 1.) In the Divorce Order, the Court found

> The party's [sic] own shares of stock in Winner Enterprises . . . . The shares owned are the separate property of each party. [Troy] owns 297,192 shares and [Nicole] owns 210,000 shares. The property in the Winner Enterprises has been in [Troy's] family for generations. There is an operating agreement and amendments that prohibit the sale of any stock to anyone other than a direct descendant or the spouse of a direct descendant of Martin T. and Elsie H. Winner. [Troy] is a direct descendant. This amendment was executed in December 2011 and January 2012. The effect of this is that even though [Nicole]'s shares are worth $624.303.00, she cannot realize that value. [Troy] has refused to purchase them from her and his mother and brother are not able to purchase them. In addition, [Troy] is able to get distributions from Winner Enterprises whenever he wants[.]
>
> . . .
>
> A distribution in-kind of the marital and divisible property is not practical in this case due to the nature of some of the marital property. Specifically, there are closely held

businesses . . . [that] are not susceptible of a division in-kind. . . . An unequal distribution in favor of [Nicole] facilitates the distribution and is necessary to achieve equity between the parties.

(*Id.* at pp. 10–11, 13.)

12.     In the Divorce Order, the Court concluded that

[a]n unequal division of the net marital and divisible property in favor of [Nicole] is equitable. [Troy] shall receive 40% of the marital and divisible property and [Nicole] shall receive 60% of the marital and divisible property.

(*Id.* at p. 14.)

13.     The Divorce Order directed Troy to pay Nicole an award of $494,772.00 on or before July 15, 2016. (ECF No. 3, at ¶ 43.) Troy has not paid Nicole any part of the award, and in December 2016, Troy filed a Chapter 13 bankruptcy proceeding.[1]

(*Id.*)

14.     Troy appealed the Divorce Order to the North Carolina Court of Appeals, (ECF No. 3, at ¶ 43 n. 2), contending, *inter alia*, that the trial court erred in valuing Nicole's interest in Winner Enterprises, and improperly used the value of her interest in making the distribution of marital property unequal. *Slaughter v. Slaughter*, 803 S.E.2d 419, 423, 2017 N.C. App. LEXIS 554, at *8 (2017). In his brief filed with the Court of Appeals, Troy argued that the trial court erred in finding that Nicole could not "realize the value" of her units in Winner Enterprises, contending that "[Nicole], as a [M]ember of Winner [Enterprises], has the right to . . . seek dissolution." (Pl.'s

---

[1] On January 17, 2017, the Bankruptcy Court entered an order modifying the automatic stay provided for under 11 U.S.C. § 362 to permit Nicole to pursue the action for dissolution. (*Id.* at n. 1.)

Br. Opp. Mot. Dismiss, ECF No. 16, at p. 5; Appellant Brief to North Carolina Court of Appeals, at p. 21 (embedded in brief as live link).) In response, Nicole argued in her brief to the Court of Appeals that "Nicole is no longer part of the [Winner] family and the Second Amendment prevents her from exercising her rights as a Winner [Enterprises] [M]ember." (Def. Reply Supp. Motion, ECF No. 19 at Ex. A, p. 23.) On July 18, 2017, the Court of Appeals issued an opinion affirming the Divorce Order and the equitable distribution award. *Slaughter*, 803 S.E.2d at 429, 2017 N.C. App. LEXIS 554, at *28–29. The Court of Appeals did not expressly address whether Nicole is a Member of Winner Enterprises.

15. On March 22, 2017, Defendant Winner Construction was formed, with Troy and Juanita as the sole members and Troy as the manager. (ECF No. 3, at ¶¶ 50, 57.) Nicole alleges that Troy used assets belonging to Winner Enterprises to capitalize and fund Winner Construction's formation and activities, transferred property belonging to Winner Enterprises to Winner Construction, and diverted a business opportunity from Winner Enterprises to Winner Construction. (*Id.* at ¶¶ 52–58.) Nicole alleges that Winner Construction is the "alter ego and mere instrumentality of Winner [Enterprises]." (*Id*. at ¶ 60.)

16. Nicole commenced this action on August 10, 2018 by filing a verified Complaint raising claims for (1) declaratory judgment that Winner Construction is the alter ego and mere instrumentality of Winner Enterprises; and (2) for judicial dissolution of both Winner Enterprises and Winner Construction pursuant to N.C. Gen. Stat. § 57D-6-02(2) (hereinafter, references to the General Statutes will be to

"G.S."). (ECF No. 3.) On September 12, 2018, Defendants filed the Motion and accompanying brief in support. (Def. Br. Supp. Motion, ECF No. 11.) Plaintiff filed her Response in Opposition to the Motion on October 15, 2018. (ECF No. 16 (hereinafter "Response").) In the Response, Nicole requests that the Court grant her leave to amend paragraph 18 of the Complaint if the Court believes it constitutes an admission that Nicole has lost her membership rights. (*Id.* at p. 14 at n. 4.) On October 25, 2018, Defendants filed a reply brief in support of the Motion. (ECF No. 19.)

17. On November 7, 2018, the Court held a hearing on the Motion at which counsel appeared and made argument. At the hearing, Plaintiff's counsel orally renewed her request for leave to amend the Complaint if the Court finds the effect of paragraph 18 to be that Nicole is no longer a Member of Winner Enterprises.

18. The Motion is now ripe for disposition.

## II.    LEGAL STANDARD

19. Defendants move to dismiss Plaintiff's claim for dissolution of Winner Enterprises and Winner Construction under North Carolina Rule of Civil Procedure Rule 12(b)(1) (hereinafter, references to the North Carolina Rules of Civil Procedure will be to "Rule(s)") for lack of standing, and Plaintiff's claim for declaratory judgment under Rule 12(b)(6) for failure to state a claim for which relief can be granted.

*A. Rule 12(b)(1) Standard*

20. "Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to dismiss." *Fuller v. Easley*,

145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001) (citations omitted); s*ee also Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002) ("Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction."). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commercial Courier Express Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005). "A motion to dismiss for lack of subject matter jurisdiction is not viewed in the same manner as a motion to dismiss for failure to state a claim upon which relief can be granted." *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978). A court may consider matters outside the pleadings in determining whether subject matter jurisdiction exists. *Id.*; *see also Keith v. Wallerich*, 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009). "As the party invoking jurisdiction, plaintiffs have the burden of proving the elements of standing." *Neuse River Found. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002).

### B. Rule 12(b)(6) Standard

21.     In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). "It is well established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts

sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. British Am. Tobacco PLC*, 2018 N.C. LEXIS 1035, at \*18–19 (2018) (quoting *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)). This standard of review for Rule 12(b)(6) is the standard our Supreme Court "uses routinely . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at \*19 n.7. Where the pleading refers to and depends on certain documents, the Court may consider those documents in deciding a motion under Rule 12(b)(6). *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009).

22. The Court construes the Complaint liberally and accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005).

III. ANALYSIS

23. Nicole seeks to dissolve Winner Enterprises and Winner Construction under G.S. § 57D-6-02(2)(ii), which provides that "[t]he superior court may dissolve an LLC in a proceeding brought by either of the following: . . . . (2) A member, if it is established that . . . (ii) liquidation of the LLC is necessary to protect the rights and interests of the member." Nicole alleges that she "had a reasonable expectation that she would enjoy all rights conferred on all [M]embers of Winner [Enterprises], and

that she would receive financial benefits from her ownership interest." (ECF No. 3, at ¶ 25.)

24. Defendants argue that the claim for judicial dissolution should be dismissed because Nicole is not a Member of Winner Enterprises nor Winner Construction. (ECF No. 10, at p. 2; ECF No. 11, at p. 4.) Defendants contend that Nicole alleges that she lost her rights as a Member of Winner Enterprises as a result of the Second Amendment when she was divorced from Troy. Defendants further argue that "the plain language of the [Operating Agreement] excludes her from membership" in Winner Enterprises. (ECF No. 10, at pp. 1–2; ECF No. 11, at pp. 4–5.) Nicole contends that the Complaint adequately alleges that she is a Member of Winner Enterprises, and that, at best, the language in the Second Amendment is ambiguous and the question of whether she lost all membership rights as a result of the Second Amendment cannot be determined at this stage of the proceedings. (ECF No. 16, at pp. 9, 11, 13–14.)

25. Defendants also argue that Nicole lacks standing because she is judicially estopped from alleging that she is a Member of Winner Enterprises in this action by assertions she made in the District Court and Court of Appeals in the Equitable Distribution Action that the Second Amendment eliminated her rights as a Member. (ECF No. 11, at pp. 5–7.) Nicole argues that judicial estoppel should not be applied to these facts because her positions in this action and the Equitable Distribution Action are not inconsistent; any inconsistencies between her positions in the two actions are not factual inconsistencies, but legal inconsistencies; and judicial

estoppel is an equitable doctrine and the Court should refuse to apply it here because of Troy's inequitable conduct. (ECF No. 16, at pp. 15–17.)

26. Finally, Defendants argue that the Court should reject Nicole's request to pierce the corporate veil and find that she has standing to seek dissolution of Winner Construction because Nicole fails to allege that Winner Enterprises owned or controlled Winner Construction, or that either Defendant committed any wrongdoing. (ECF No. 11, at pp. 7–9.) Nicole counters that she has sufficiently pleaded her alter-ego theory by alleging that Troy dominated and controlled Winner Enterprises and Winner Construction and treated them interchangeably. (ECF No. 16, at pp. 18–22.)

27. The Court will first address Nicole's standing to seek dissolution of Winner Enterprises, and secondly address her claim that Winner Construction should be treated as the alter-ego of Winner Enterprises for purposes of giving her standing to seek dissolution of Winner Construction.

*A. Nicole's Claim Seeking Dissolution of Winner Enterprises*

28. "[T]he North Carolina statutes provide for judicial dissolution only where a proceeding is brought by the Attorney General, a member, or the limited liability company itself." *Klingerman v. ExecuCorp, LLC*, 388 B.R. 677, 678, 2008 Bankr. LEXIS 1117, at *3 (E.D.N.C. Bankr. Apr. 10, 2008). Plaintiff seeks judicial dissolution of Winner Enterprises under G.S. § 57D-6-02(2). (ECF No. 3, at ¶ 70.) G.S. § 57D-6-02(2) only authorizes judicial dissolution of an LLC in a proceeding brought by a member. *Azure Dolphin, LLC v. Barton*, 2017 NCBC LEXIS 90, at *17

(N.C. Super. Ct. Oct. 2, 2017) ("Under [G.S.] § 57D-6-02(2), only a member of an LLC has standing to assert a claim for judicial dissolution.").

29.     Defendants first contend that Nicole's allegation that "the effect of [the Second Amendment] was to revoke all rights of [Nicole] as a [M]ember of Winner [Enterprises] in the event of a divorce," including prohibiting her from selling her membership interest to anyone other than Direct Descendants and Spouses, (ECF No. 3, at ¶ 18), is admission that she is not a Member of Winner Enterprises and precludes her from having standing to seek judicial dissolution.  Nicole concedes that the wording of her allegation is unartful, but argues that it should be read as alleging merely that the effect of the Second Amendment was to "cripple[ ] Nicole's ability to realize the value of her membership in Winner Enterprises without judicial dissolution." (ECF No. 16, at pp. 13–14; emphasis omitted.)  Nicole also contends that she has sufficiently alleged that she is still a Member of Winner Enterprises elsewhere in the Complaint, and that her judicial dissolution claim should survive dismissal.  (ECF No. 16, at pp. 13–14.)

30.     After thorough review of the allegations, the Court concludes that Nicole has sufficiently alleged that she retains a membership interest in Winner Enterprises to permit her to continue with her claim for dissolution at this early stage of the case.  The Complaint makes frequent reference to her attempts to obtain compensation for her "membership" interest in Winner Enterprises. (*See, e.g.*, ECF No. 3, at ¶¶ 41, 58, 68, 70.)  In addition, as discussed below, the Court is not convinced that the Second Amendment eliminated all of Nicole's rights as a Member of Winner Enterprises.  At

this stage, the Court believes the allegations in paragraph 18 should be construed as claiming that Nicole lost her rights to sell her membership interest, and not as an admission that she lacks standing.

31. Defendants next contend that Nicole admits she executed the Second Amendment, and that the Second Amendment clearly and unambiguously extinguishes her rights as a Member of Winner Enterprises. "An operating agreement is a contract," and is interpreted under the rules of contract construction. *N. Carolina State Bar v. Merrell*, 243 N.C. App. 356, 370–71, 777 S.E.2d 103, 114 (2015); G.S. § 57D-2-30(e) (contract law governs the "administration and enforcement of operating agreements"). Accordingly, the Court will interpret the Second Amendment to determine if it clearly and unambiguously extinguishes Nicole's rights as a Member of Winner Enterprises.

32. "With all contracts, the goal of construction is to arrive at the intent of the parties when the contract was issued. The intent of the parties may be derived from the language in the contract." *Bank of Am., N.A. v. Rice*, 230 N.C. App. 450, 456, 750 S.E.2d 205, 209 (2013) (quotation omitted); *see also Lane v. Scarborough*, 284 N.C. 407, 409–10, 200 S.E.2d 622, 624 (1973) ("Whenever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties at the moment of its execution."). The intention of the parties "is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Lane*, 284 N.C. at 410, 200 S.E.2d at 624 (quoting *Electric Co. v. Ins. Co.*, 229 N.C. 518, 520, 50 S.E.2d 295, 297 (1948)). In

analyzing the intent of the parties "[t]he court must construe the contract as a whole and [its provisions] must be appraised in relation to all other provisions." *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008) (internal quotation omitted). "It is presumed that each part of the contract means something." *Brown v. Lumbermens Mut. Casualty Co.*, 326 N.C. 387, 393, 390 S.E.2d 150, 153 (1990) (quotation omitted). "The various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect[.]" *Duke Energy Corp. v. Malcolm*, 178 N.C. App. 62, 65, 630 S.E.2d 693, 695 (2006) (quotation omitted); *see also In re Foreclosure of a Deed of Trust*, 210 N.C. App. 409, 415, 708 S.E.2d 174, 178 (2011) (quoting *Duke Energy*).

33. "When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court and the court cannot look beyond the terms of the contract to determine the intentions of the parties." *Bank of Am.*, 230 N.C. App. at 456, 750 S.E.2d at 209 (quotation omitted); *see also Lynn v. Lynn*, 202 N.C. App. 423, 431, 689 S.E.2d 198, 204 (2010). "Whether or not the language of a contract is ambiguous [ ] is a question for the court to determine." *Lynn*, 202 N.C. App. at 432, 689 S.E.2d at 205 (quotation omitted).

34. As an initial matter, the Second Amendment provides that its purpose is to "amend the qualifications of Members and Managers to restrict management and control of the Company to certain family members[.]" (ECF No. 10. at Ex. A, p. 1.) The provision does not expressly state that the purpose of the amendment is to alter Members' rights.

35. The Second Amendment provides that the "Member" is "each Person designated as a Member . . . on Schedule I hereto," but restricts Members who are not Direct Descendants and Spouses from exercising certain rights in the Operating Agreement. Nicole is designated as a Member in Schedule I. (ECF No. 10 at Ex. A, p. 6.) The primary effect of the restrictions is to remove Members who are not Direct Descendants and Spouses from participating in certain decisions regarding: the removal, replacement and compensation of Managers; the admission of new Members to the LLC; and the amendment of the Operating Agreement. The restrictions also purport to impact the right of a Member who is not a Direct Descendant or Spouse under Article 11 of the Operating Agreement to seek dissolution of the LLC. However, to the extent Defendants contend that the restrictions would prohibit a Member from seeking dissolution pursuant to G.S. § 57D-6-02(2), the Court is not convinced that such a restriction would be enforceable. *See* G.S. § 57D-2-30(b)(1)(c) ("The operating agreement may not . . . [s]upplant, vary, disclaim, or nullify . . . clause (ii) of [G.S. §] 57D-6-02(2)[.]").

36. The Second Amendment also amends the definition of "Person" in the Operating Agreement to require that a Person be either a Direct Descendant or a Spouse. Since a Member must be a Person, this amendment could be interpreted as eliminating Nicole from being a Member once she was divorced from Troy, because she was no longer a Spouse. This interpretation, however, would render the restrictions in the Second Amendment on those Members who are counted towards a Majority in Interest, and the restrictions on the rights of Members who are not Direct

Descendants and Spouses meaningless, because anyone who was not a Direct Descendant or a Spouse could not be a Member. If such individuals are not Members, there would be no reason to restrict their interests from being counted in determining a Majority in Interest, or to prohibit them from only certain membership rights. Such a construction would make the amendments to the definitions of Majority in Interest and Member superfluous. *Duke Energy Corp.*, 178 N.C. App. at 65, 630 S.E.2d at 695.

37. The Court concludes that the effects of the modifications to the Operating Agreement in the Second Amendment are, at best, ambiguous. The intent behind the Second Amendment appears to be to keep control and management of Winner Enterprises, and ownership of membership interests, within a small circle of family members and their spouses. In addition, the changes to the definitions of Member, Majority in Interest, and Person, cannot be harmonized without rendering certain language in the Second Amendment superfluous. It is not clear that the Second Amendment eliminated all of Nicole's membership rights when she divorced from Troy.

38. Defendants also argue that Nicole should be judicially estopped from claiming that she is a Member of Winner Enterprises because of representations she made in the District Court and the Court of Appeals in the Equitable Distribution Action. Generally, "judicial estoppel forbids a party from asserting a legal position inconsistent with one taken earlier in the same or related litigation." *Price v. Price*, 169 N.C. App. 187, 191, 609 S.E.2d 450, 452 (2005) (quotation omitted). The North

Carolina Supreme Court has identified three factors that inform whether judicial estoppel is properly invoked:

> First, a party's subsequent position must be clearly inconsistent with its earlier position
>
> Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled
>
> Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 29, 591 S.E.2d 870, 888–89 (2004) (internal citations and quotation marks omitted). Due to the equitable nature of the doctrine, courts may consider other factors, including whether a party's prior inconsistent position was the result of "inadvertence or mistake." *Id.* at 30, 591 S.E.2d at 889 (internal quotation marks omitted); *see also Indus. Fabricators v. At-Net Servs. - Charlotte*, 2018 NCBC LEXIS 47, at *18–19 (N.C. Super. Ct. May 9, 2018).

39. The North Carolina Supreme Court has emphasized that "the doctrine of judicial estoppel limits only inconsistent assertions of fact," not inconsistent or contradictory legal positions or theories. *Whitacre*, 358 N.C. at 32, 591 S.E.2d at 890. Moreover, the doctrine "is not intended to eliminate all inconsistencies, however slight or inadvertent[.]" *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 359, 28 Bankr. Ct. Dec. 1178 (3d Cir. 1996); *see also Whitacre*, 358 N.C. at 33, 591 S.E.2d at 892 (quoting *Ryan Operations*). Rather, trial courts must "carefully

balance the equities in applying judicial estoppel" and recognize that "a reasonable justification for a party's change in position may militate against its application in a particular case." *Whitacre,* 358 N.C. at 34, 591 S.E.2d at 892.

40. Defendants argue that Nicole obtained an unequal distribution of marital property in the Equitable Distribution Action by asserting in that action that she could not "realize the value of her interest in Winner Enterprises." (ECF No. 11, at p. 6.) The Divorce Order states that the unequal distribution is based, in part, on Nicole's inability to sell her membership interest in Winner Enterprises because she was restricted to selling to Direct Descendants and Spouses, and because Troy had refused to purchase her interests. (ECF No. 3 at Ex. 1, pp. 10–11.) However, the Divorce Order does not mention any contention by Nicole that she was not a Member of Winner Enterprises, nor that she did not have the ability to seek judicial dissolution of the company. Judge Jordan did not expressly rely on any finding regarding Nicole's membership in Winner Enterprises in reaching the conclusions in the Divorce Order. Rather, Judge Jordan appears to have found only that Nicole was unable to realize the value of her membership interest because the Second Amendment restricted Nicole's ability to sell her membership interest.

41. Defendants further argue that Nicole made a representation in her brief to the Court of Appeals that should estop her from contending that she is a Member of Winner Enterprises in this action. (ECF No. 11, at pp. 6–7.) In her brief to the Court of Appeals, Nicole asserted that "the Second Amendment prevents her from exercising her rights as a Winner [Enterprises] [M]ember." (ECF No. 19 at Ex. A,

p. 22.)  The Court of Appeals affirmed the Divorce Order.  However, in its Opinion affirming the Divorce Order, the Court of Appeals did not make any express finding regarding whether Nicole was a Member of Winner Enterprises nor regarding her right to seek dissolution.

42.    The Court concludes that, based on the allegations in the Complaint and the information in the record, Defendants have failed to establish that Nicole should be judicially estopped from claiming that she is a Member of Winner Enterprises for purposes of pursuing her claim for dissolution.  While the record could support the contention that Nicole took a factually inconsistent position in the Equitable Distribution Action and in the appeal from the Divorce Order by asserting that she had lost her membership rights in Winner Enterprises, the allegations and evidence do not establish that Nicole "succeeded in persuading [either the District Court or Court of Appeals] to accept [her] earlier position."  *Whitacre*, 358 N.C. at 29, 591 S.E.2d at 889 (quotation omitted).  Neither court expressly found that Nicole was not a Member of Winner Enterprises nor that she had lost her right to seek dissolution of the company.  At most, the two courts concluded that Nicole was entitled to an unequal distribution of marital property because the Second Amendment prevented her from selling her membership interest in Winner Enterprises to anyone other than Direct Descendants and Spouses.

43.    In addition, the Court concludes that the allegations and record fail to show that Nicole would gain "an unfair advantage[,]" *id.*, over Defendants by being permitted to assert that she is a Member of Winner Enterprises in this lawsuit.  As

noted above, Troy's representation to the Court of Appeals that Nicole had a right to seek dissolution leads the Court to conclude that the question of what, if any, rights Nicole retains as a Member of Winner Enterprises is an unsettled issue between Nicole and Troy. The Court also notes that Nicole alleges that Troy has taken actions to avoid paying her the award required by the Divorce Order and, to date, she has not received payment of the award. (ECF No. 3, at ¶ 43.)

44.     Based upon the foregoing, the Court concludes that Defendants' motion to dismiss Nicole's Second Claim for Relief for judicial dissolution of Winner Enterprises should be DENIED.

*B. Nicole's Claim for Judicial Dissolution of Winner Construction*

45.     Plaintiff has not alleged that she is a member of Winner Construction, and she does not appear to have standing to seek judicial dissolution of Winner Construction. *See Azure Dolphin, LLC*, 2017 NCBC LEXIS 90, at *17.

46.     Nicole attempts to circumvent this statutory requirement through her First Claim for Relief, which seeks a declaratory judgment from the Court, under a veil-piercing theory, that "Winner Construction is the mere instrumentality of Winner [Enterprises] and that Winner Construction is subject to judicial dissolution." (ECF No. 3, at ¶ 63.) Nicole argues that "[b]ecause Nicole has sufficiently pled that Winner Construction is a mere instrumentality of Winner [Enterprises], she has standing to seek the judicial dissolution of Winner Construction, along with Winner [Enterprises]." (ECF No. 16, at p. 18.)

47. "In North Carolina, what has been commonly referred to as the 'instrumentality rule,' forms the basis for disregarding the corporate entity or 'piercing the corporate veil.'" *Fischer Inv. Capital, Inc. v. Catawba Dev. Corp.*, 200 N.C. App. 644, 649–50, 689 S.E.2d 143, 147, (2009) (citation omitted). The Court of Appeals recently held that

> Piercing the corporate veil . . . allows a plaintiff to impose legal liability for a corporation's obligations . . . upon some other company or individual that controls and dominates the corporation. It is well recognized that courts will disregard the corporate form or 'pierce the corporate veil,' and extend liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud or to achieve equity.

> The Supreme Court has explained that [e]vidence upon which [our courts] have relied to justify piercing the corporate veil includes inadequate capitalization, noncompliance with corporate formalities, lack of a separate corporate identity, excessive fragmentation, siphoning of funds by the dominant shareholder, nonfunctioning officers and directors, and absence of corporate records. Ultimately, [t]he aggrieved party must show that the corporation is so operated that it is a mere **instrumentality** or *alter ego* of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State.

*Howe v. Links Club Condo. Ass'n*, 2018 N.C. App. LEXIS 1222, at *37 (2018) (internal citations and quotation marks omitted).

48. In order to pierce the corporate veil, the complaint must contain allegations sufficient to establish three elements:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of [a] plaintiff's legal rights; and

3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* at *40 (citation omitted). "As our Supreme Court has recognized, the doctrine of piercing the corporate veil is not a theory of liability." *Hamby v. Thurman Timber Co., LLC*, 818 S.E.2d 318, 324, 2018 N.C. App. LEXIS 717, at *11 (2018) (internal citations and quotation marks omitted). Rather, in order to properly assert the legal theory of piercing the corporate veil, Plaintiff must have "an underlying legal claim to which liability may attach." *Nicks v. Nicks*, 241 N.C. App. 487, 497, 774 S.E.2d 365, 374 (2015) (quotation omitted).

49. Preliminarily, Nicole does not cite any North Carolina authority in support of her contention that application of the veil-piercing legal theory could provide standing to an individual who is not a member of a limited liability company to seek judicial dissolution of that company under G.S. § 57D-6-02(2). The Court has not found any case standing for this proposition. Nevertheless, Nicole argues that she has adequately alleged facts authorizing the Court to pierce the corporate veil of Winner Construction, by virtue of Troy's domination and control over both Winner Enterprises and Winner Construction, to confer on Nicole statutory standing to seek dissolution of Winner Construction under G.S. § 57D-6-02(2). (ECF No. 16, at p. 18–20.) The Court concludes, however, that veil-piercing is not properly raised in the context of the claims and parties involved in this lawsuit.

50.     Nicole has not raised any claims in this lawsuit to which liability could attach to Winner Construction.  Nicole alleges that because Troy is the manager and controlling member of both Winner Enterprises and Winner Construction, and has allegedly used his control to divert assets and opportunities from Winner Enterprises to Winner Construction, she should be able to reach Winner Construction's assets as part of a dissolution of Winner Enterprises.  However, Troy is not a party to this lawsuit, and Nicole has not raised any claims against Winner Enterprises, Winner Construction, or Troy, such as breach of fiduciary duty, breach of contract, fraud, or conversion, that challenge the alleged diversion of assets.  Because there is no underlying claim for which liability could attach to Winner Construction, Nicole's veil-piercing argument must fail.  *Nicks*, 241 N.C. App. at 497, 774 S.E.2d at 374 ("[S]ufficient evidence of domination and control establishes only the first element for liability [for veil piercing].  There must also be an underlying legal claim to which liability may attach" (citation omitted).).  The Court cannot use veil-piercing as a mechanism to confer on Nicole the necessary standing to bring her claim for judicial dissolution of Winner Construction.

51.     Accordingly, the Court concludes that Defendants' motion to dismiss Nicole's Second Claim for Relief for judicial dissolution of Winner Construction should be GRANTED, and the claim DISMISSED, without prejudice.

*C. Nicole's Claim for Declaratory Judgment*

52.    Nicole's first claim for relief seeks a declaration that Winner Construction is the alter ego and mere instrumentality of Winner Enterprises. (ECF No. 3, at ¶ 60.)

53.    "In actions involving a request for a declaratory judgment, our Supreme Court has required that an actual controversy exist both at the time of the filing of the pleading and at the time of the hearing." *Fabrikant v. Currituck Cty.*, 174 N.C. App. 30, 44, 621 S.E.2d 19, 29 (2005) (quoting *Nat'l Travel Servs., Inc. v. State*, 253 N.C. App. 289, 291, 569 S.E.2d 667, 668–69 (2002) (internal quotation marks omitted)). "Although our appellate courts have not specifically defined an 'actual controversy,' it is well established that '[a] mere difference of opinion between the parties' is not sufficient for purposes of the Declaratory Judgment Act." *Id.* (quoting *Town of Tryon v. Duke Power Co.*, 222 N.C. 200, 205, 22 S.E.2d 450, 453 (1942)). "To satisfy the jurisdictional requirement of an actual controversy, it must be shown in the complaint that litigation appears unavoidable. Mere apprehension or the mere threat of an action or suit is not enough." *State ex rel. Utils. Comm'n v. Carolina Water Serv.*, 149 N.C. App. 656, 658, 562 S.E.2d 60, 62 (2002).

54.    Here, Nicole does not allege the existence of an actual controversy between Nicole, on the one hand, and Winner Enterprises and/or Winner Construction, on the other, over whether Winner Construction is an instrumentality of Winner Enterprises. Nicole does not allege, for example, that she has requested records or information from Winner Construction on grounds that it is the alter ego

of Winner Enterprises and been denied such records. Nicole does not allege any facts that make it appear that litigation between herself and Defendants over the issue is "unavoidable." *Id.* Instead, Nicole seems to be seeking an opinion of some type for future use to access Winner Construction's assets should she successfully assert claims for liability against Winner Enterprises or Troy. A declaration of the type sought by Plaintiff would amount to an advisory opinion, and would not "settle and afford relief from uncertainty concerning rights, status and other legal relations" between the Parties. *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 446, 206 S.E.2d 178, 186 (1974). Considering all of this, the Court concludes that Nicole's First Claim for Relief for declaratory judgment is not yet ripe.

55. Accordingly, the Court concludes that Defendants' motion to dismiss Nicole's First Claim for Relief for declaratory judgment should be GRANTED, and the claim DISMISSED, without prejudice.

## IV. PLAINTIFF'S MOTION FOR LEAVE TO AMEND

56. The Court's decision that Nicole has sufficiently alleged at this stage that she is a Member of Winner Enterprises renders moot her motion, made in her Response and orally at the hearing, for leave to amend paragraph 18 of the Complaint. Accordingly, Nicole's motion to amend should be DENIED, without prejudice, as moot.

## V. CONCLUSION

THEREFORE, IT IS ORDERED that:

57. Defendants' motion to dismiss Nicole's Second Claim for Relief for judicial dissolution of Winner Enterprises is DENIED.

58. Defendants' motion to dismiss Nicole's Second Claim for Relief for judicial dissolution of Winner Construction is GRANTED, and that claim is DISMISSED, without prejudice.

59. Defendants' motion to dismiss Nicole's First Claim for Relief for declaratory judgment is GRANTED, and that claim is DISMISSED, without prejudice.

60. Nicole's motion to amend is DENIED, without prejudice, as moot.

This, the 7th day of January, 2019.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases